KAUGER, J.
 

 T1 The issue presented is whether the trial court erred in granting a new trial. We hold that it did not.
 

 DISPUTED FACTS
 

 T2 On October 4, 2003, Gus Taliaferro, Sr. (Taliaferro/deceased) went to the Norman Regional Hospital Emergency Room complaining of shortness of breath and pain in his chest-his second episode that week. Dr. Brent Wauters, an ER physician, advised him that his symptoms were the result of pre-existing emphysema and sent him home. On October 7, 2008, Taliaferro returned to the emergency room with the same symptoms. Dr. Thomas Ingmire, an emergency room physician, ordered an electrocardiogram, chest x-ray, and cardiac enzyme tests, each of which yielded normal results. Dr. Ingmire also administered two breathing treatments to Taliaferro and recommended that he be admitted for a cardiopulmonary work-up.
 

 13 Taliaferro was admitted to the care of the appellant, Dr. Mehran Shahsavari (Dr. Shahsavari/doctor), an internist in private practice at Norman Regional Hospital. On October 7-8, 2008, the doctor recommended breathing treatments every 4 hours. Relying on the tests performed the day before by Dr. Ingmire, Dr. Shahsavari ordered no further work-up and released Taliaferro at 10:45 am. on October 8, 2008. At 8:00 a.m. on October 9, 2008, Taliaferro returned to the hospital with severe sub-sternal chest pain. Despite treatment which included placement of stents and a balloon pump by a cardiologist, Dr. Dia Abochamh, Taliaferro died in the late afternoon on October 9, 2008. A week after Taliaferro's death, Sherry Taliaf-erro, the deceased's widow and representative of his estate (widow), met with Dr. Abo-chamh, who told her that her husband's death was the result of "manslaughter" committed by Dr. Shahsavari.
 
 [1]
 

 14 On March 29, 2004, the widow brought an action for malpractice against Dr. Shahsa-vari. During voir dire, the widow objected to a prospective juror, Barbara Jean O'Neill (O'Neill). O'Neill had been an X-ray technician in heart catheterization labs for thirty years where she assisted doctors in the same kind of work that Dr. Shahsavari performed. O'Neill had a daughter-in-law who worked in Norman Regional's catheterization lab with Dr. Shabsavari on a regular basis. O'Neill had also been previously introduced to one of Dr. Shabsavari's expert witnesses by her daughter-in-law.
 

 
 *1247
 
 15 The widow objected to O'Neill on the grounds that she would become an expert witness to the other jurors. The trial court chose not to exeuse her based on her assertions during voir dire that she could be fair and impartial in weighing the evidence. The widow used her first peremptory challenge to remove O'Neill. The only other juror challenged for cause by the widow was prospective juror, Robert Winslow, whose father was a surgeon. The Court granted the challenge and removed Winslow. Another prospective juror, Corrie Sue Butler, had been a neonatal nurse at Norman Regional for 35 years. The widow did not challenge her, and she was seated as juror number four. Dr. Shahsavari made no challenges for cause.
 

 T6 At trial, one of the widow's expert witnesses was Dr. Dia Abochamh, the physician who had last treated Taliaferro. Dr. Abochamh testified that Dr. Shabsavari was negligent in failing to perform a cardiovaseu-lar work-up on Taliaferro, and that had a work-up been performed, Taliaferro's life most probably could have been saved.
 

 T7 The court, over the widow's objection, allowed evidence of an incident to be introduced at trial by Dr. Shabsavari for the purpose of showing evidence of Dr. Abo-chamh's motive or bias. In late July 2008, Dr. Abochamh vandalized Dr. Shahsavari's car by scratching it with a key. Dr. Abo-chamh could not recall the reason why he vandalized Dr. Shabhsavari's car. Dr. Shabh-savari maintains that the incident was a result of Dr. Abochamh's perception that he was not receiving the referrals from Dr. Shahsavari that he deserved.
 
 [2]
 
 Dr. Abochamh self-reported the incident, and the hospital placed him on a six week leave of absence and requested that he undergo psychiatric . evaluation and counseling for anger management. After his return to Norman Regional in early 2004, Dr. Abochamh's sponsoring physician terminated his relationship with him and asked him to leave Norman Regional. Dr. Abochamh subsequently left and now practices medicine in Port Arthur, Texas. Although the trial judge interrupted the doe-tor's counsel in the middle of introducing this evidence and warned her out of the hearing of the jury that the court had had enough of it and she was "... just beating it to death,"
 
 [3]
 
 the judge did not prevent Dr. Shah-savari from fully introducing evidence of the incident.
 

 18 At the close of argument, the court presented the Jury with several instructions. Instruction Number 15 (Oklahoma Uniform Jury Instruction 14.3) provided:
 

 Alternative Methods of Diagnosis or Treatment
 

 Where there is more than one medically accepted method of diagnosis, a physician has the right to use his best judgment in the selection of the diagnosis, after securing the informed consent of the patient, even though another medically accepted method of diagnosis might have been more effective. OUJI 14.3
 

 The widow objected to the inclusion of Instruction Number 15 on the grounds that she felt the case did not involve a choice of diagnosis, but a failure to take any diagnostic action whatsoever. The trial court overruled the objection and included Instruction Number 15.
 

 T9 On February 15, 2005, the jury returned a 9-3 verdict in favor of Dr. Shahsa-vari. On March 10, 2005, the widow filed a Motion for New Trial. The trial court heard argument on the widow's motion on April 12, 2005, and granted the motion on May 17, 2005. The trial judge listed the following errors in the Order Granting Plaintiff's Motion for New Trial: 1) admitting evidence of Dr. Abochamh's vandalism of Dr. Shabhsa-vari's automobile; 2) not exeusing juror O'Neill for cause; and 8) giving Jury Instruetion Number 15, where the case did not involve choices of method of diagnosis. The Order's closing provides in pertinent part:
 

 ... By reason whereof, Plaintiff was denied a fair trial, and, although the Court cannot say that the outcome would have been different if the Court had not made the aforementioned errors, the Court be
 
 *1248
 
 lieves that both parties, including the Plaintiff, should have a fair trial.
 

 10 Dr. Shahsavari appealed, and on April 25, 2006, the Court of Civil Appeals reversed and remanded, finding that the trial judge abused its discretion in granting the widow's motion for a new trial. We granted certiorari on June 26, 2006.
 

 111 THE TRIAL COURT DID NOT ERR BY GRANTING THE MOTION FOR A NEW TRIAL.
 

 1 12 The doctor argues that the trial court erred by granting a new trial because: 1) any alleged error that occurred was harmless and, thus, could not serve as the basis for granting a new trial; and 2) the trial court did not make the requisite finding that the outcome of the trial would have differed but for the alleged errors. The doctor insists that the trial court admitted to the absence of a lawful reason to grant a new trial. Tal-iaferro counters that the trial court did not err by granting the motion for a new trial because even if an individual error was insufficient to require a new trial, the cumulative effect of all of the errors resulted in an unfair trial.
 

 T 18 The right of a party to a fair trial is preserved by 12 0.8.2001 § 651 which provides in pertinent part:
 

 A. A new trial is a reexamination in the same court, of an issue of fact or of law or both, after a verdict by a jury, the approval of the report of a referee, or a decision by the court. The former verdict, report, or decision shall be vacated, and a new trial granted, on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of the party:
 

 1. Irregularity in the proceedings of the court, jury, referee, or prevailing party, or any order of the court or referee, or abuse of discretion, by which the party was prevented from having a fair trial....
 

 When a party is prevented from having a fair trial as a result of an error which materially affects the substantial rights of the party, a new trial is required.
 
 [4]
 
 Reversible error has been held to be an error that creates a probability of change in the outcome of the lawsuit.
 
 [5]
 

 114 This Court has long recognized that a trial court is vested with wide discretion as to whether to grant a new trial.
 
 [6]
 
 The burden to establish a trial court's abuse of discretion in granting a new trial rests with the appellant.
 
 [7]
 
 However, when a trial court's decision to grant a new trial is appealed, this Court will employ every presumption in favor of the correctness of the trial judge's ruling.
 
 [8]
 

 
 *1249
 
 When the new trial is granted by the same judge who tried the case, a much stronger showing of error or abuse of discretion is required for this Court to reverse than if a party appeals from a refusal to grant a new trial.
 
 [9]
 
 We have previously noted that the requisite showing for reversal is that the record clearly shows that the trial court either erred on a pure and unmixed question of law or acted arbitrarily or capriciously.
 
 [10]
 
 Notwithstanding a stronger showing of abuse of discretion, a trial court's power to grant new trials is limited by the bounds of judicial discretion,
 
 [11]
 
 and it is an abuse of discretion for the trial court to grant a new trial based purely on harmless error.
 
 [12]
 
 We have, in some cireumstances, reversed an order granting a new trial.
 
 [13]
 

 a. Excusing Juror for Cause.
 

 T16 The first error enumerated by the trial court as grounds for granting the widow's motion for a new trial was the court's failure to exeuse Juror O'Neill for cause. Ordinarily, a juror is established as impartial upon testifying to a belief that he or she can render an impartial verdiet on the evidence presented.
 
 [14]
 
 However, 12 0.98.2001 § 572 provides the basis upon which a party may challenge a juror for cause without employing a peremptory challenge:
 

 If there shall be impaneled, for the trial of any cause, any petit juror, who shall have been convicted of any crime which by law renders him disqualified to serve on a jury; or who has been arbitrator on either side, relating to the same controversy; or who has an interest in the cause; or who has an action pending between him and either party; or who has formerly been a juror in the same cause; or who is the employer, employee, counselor, agent, steward or attorney of either party; or who is subpoenaed as a witness; or who is of kin to either party; or any person who shall have served once already on a jury, as a tales-man on the trial of any cause, in the same court during the term, he may be challenged for such causes; in either of which cases the same shall be considered as a principal challenge, and the validity thereof be tried by the court; and any petit juror who shall be returned upon the trial of any of the causes hereinbefore specified, against whom no principal cause of challenge can be alleged, may, nevertheless, be challenged on suspicion of prejudice against, or partiality for either party, or for want of competent knowledge of the English language, or any other cause that may render him, at the time, an unsuitable juror; but a resident and tazpayer of the State or any municipality therein shall not be thereby disqualified in actions in which such municipality is a party. The
 
 *1250
 
 validity of all challenges shall be determined by the court. (Emphasis added.)
 

 117 The manifest purpose of the statute is to enable litigants to select a fair and impartial jury to try and determine questions of fact involved in their controversies, and it is for the court to determine the validity of all challenges.
 
 [15]
 
 The trial judge is the ultimate guardian of the constitutional guarantee of a fair and impartial jury. The right to a fair and impartial jury should not be left to a contest to determine who can, with leading questions, rehabilitate or disqualify a juror in a quest to either remove or keep a juror in the case. Due to Juror O'Neill's acquaintance with the expert witnesses, family connection to the hospital involved, and expertise in the particular medical field in question, she should have been excused for cause.
 

 118 However, at trial, the widow offered no argument that an unfavorable juror was seated because she was forced to expend a peremptory challenge on Juror O'Neill. Juror Butler, a neo-natal nurse at Norman Regional Hospital, was seated on the jury, but the widow did not challenge Butler for cause. She used her two remaining peremptory challenges on other potential jurors, rather than to remove Butler. The widow made no showing at the trial level that there would have been a probability of a change in the outcome of the lawsuit if Juror O'Neill would have been removed for cause rather than by peremptory challenge.
 

 b. Admission of Prejudicial Evidence.
 

 119 The second error enumerated by the trial court as grounds for granting the widow's motion for a new trial was the court's decision to admit evidence of the Dr. Abochamh's vandalism of Dr. Shahsavart's automobile. The vandalism incident was a point of contention between the parties throughout the whole trial process.
 

 1 20 Cross-examination of a witness for the purpose of eliciting facts to show bias or prejudice is always considered competent.
 
 [16]
 
 A trial court, because of its first-hand exposure to the evidence and familiarity with the trial proceedings, has broad discretion to decide whether the value of proffered evidence outweighs the prejudice to the opposing party.
 
 [17]
 
 The trial court made this determination after hearing the witnesses and the attorney's examination tactics.
 

 121 Dr. Abochamh was the widow's primary witness, and the validity of his testimony was called into question by Dr. Shahsa-vari's persistent discussion of the vandalism incident. The car-keying incident was first alluded to in Dr. Ingmire's testimony when he mentioned that there "were some controversial" issues that came up with regard to whether Dr. Abochamh was a good doctor.
 
 [18]
 

 
 *1251
 
 122 On cross-examination, Dr. Shahsavari was questioned over the incident and on the conflicts he had with Dr. Abochamh.
 
 [19]
 
 However, Dr. Shahsavari admitted that the conflict between Dr. Abochamh and him was not patient-care related.
 
 [20]
 
 The incident was again mentioned in re-direct examination. The incident was, for a final time, fully explored in Dr. Shahsavari's closing argument.
 
 [21]
 

 123 A trial court has broad discretion in determining the relevance of proffered evidence and in balancing its probative value and unfair prejudice.
 
 [22]
 
 This court can reverse only upon finding that the trial court abused its discretion. If it had been kept in proper perspective (as the trial judge attempted, but stopped short of doing from the bench during the trial), the car vandalism evidence would have been relevant and material on the issues of bias, prejudice, credibility or motive. Instead, the presentation of that evidence became a distraction resulting in the prejudicial effect outweighing the probative value. We are not convinced that the trial court acted arbitrarily or capriciously or erred on a pure and unmixed question of law when it finally determined that the unfair prejudice outweighed any probative value of the evidence of the vandalism.
 
 [23]
 

 c. Confusing Jury Instruction.
 

 €24 The third error enumerated by the trial court as grounds for granting widow's motion for a new trial was the court's decision to include Jury Instruction Number 15 (Oklahoma Uniform Jury Instruction 14.3) which provides:
 

 Alternative Methods of Diagnosis of Treatment
 

 Where there is more than one medically accepted method of diagnosis, a physician has the right to use his best judgment in the selection of the diagnosis, after securing the informed consent of the patient, even though another medically accepted method of diagnosis might have been more effective. OUJI 14.3
 

 125 Instructions are explanations of the law of a case enabling a jury to better understand its duty and to arrive at a correct conclusion.
 
 [24]
 
 It is the trial court's duty to instruct on the fundamental issues of a case. Failure to do so is grounds for a new trial.
 
 [25]
 
 In giving instructions, the trial court is not required to frame the issues, but it must state the law correctly.
 
 [26]
 
 Fundamental error occurs when the trial court does not
 
 *1252
 
 accurately instruct the jury on the law.
 
 [27]
 
 The test of reversible error in giving jury instructions is whether the jury was misled to the extent of rendering a different verdiet than it would have rendered had the errors not occurred.
 
 [28]
 

 T26 Although the law was stated correctly in Jury Instruction Number 15, this instruction was inapplicable to the facts in this cause and it misled the jury. "Diagnosis" is defined in Black's Law Dictionary as, a medical term, meaning the discovery of the source of a patient's illness or the determination of the nature of the disease from a study of its symptoms.
 
 [29]
 
 Similarly, Dorland's Illustrated Medical-Legal Dictionary defines "diagnosis" as either the determination of the nature of a case of disease or the art of distinguishing one disease from another.
 
 [30]
 
 These definitions speak of action, not inaction.
 

 27 The doctor did not perform any diagnosis, as the record reflects, on the deceased, the day before the fatal heart-attack.
 
 [31]
 
 The doctor relied on the results of tests performed by Dr. Ingmire.
 
 [32]
 
 The doctor did not order any tests and did nothing else except monitor the deceased. A physician arrives at a diagnosis as a result of trying different treatments on the patient and seeing what works.
 
 [33]
 
 The doctor did not perform any type of testing on the deceased the day before the fatal heart attack. This inaction cannot be characterized as a diagnosis.
 

 1 28 The widow characterizes her theory of negligence as that of inaction, rather than one of choosing a less effective method of treatment. She contends that the instruction neither applied to the evidence nor to the issues presented. We agree.
 

 129 The instruction of alternative diagnosis should only be given when the evidence allows the jury to find that more than one method of diagnosis is recognized by the average practitioner.
 
 [34]
 
 To justify this type of instruction, the defendant must show that the method of diagnosis has substantial support within the medical community.
 
 [35]
 
 In order to make this showing, the doctor's expert
 
 *1253
 
 must testify that the challenged method of diagnosis has substantial support and is generally recognized within the medical community.
 
 [36]
 

 130 The question in the usual failure to diagnose case is whether the doctor was negligent in failing to recognize the significance of the symptom or symptoms. The alleged negligence lies in failing to do something, not in negligently choosing between two or more courses of action.
 
 [37]
 
 Doing something and doing nothing do not add up to two methods of diagnosing a disease. In this case, the doctor's experts gave opinions as to whether the doctor breached the standard of care. However, none of these witnesses testified that there were alternative methods of diagnosis employed by the doctor. Because alternative methods of diagnosis were not employed, the instruction should have not have been given. The trial court erred when it allowed this instruction to be read to the Jury.
 

 d. The order granting a new trial.
 

 T81 A trial court, when entertaining a motion for a new trial, has wide discretion to determine whether certain happenings in the course of a trial are error and whether such errors necessitate a new trial. The boundary of that discretion is that a trial court may not order a new trial purely because of harmless error. The doctor would have us construe the closing language of the Order Granting Plaintiffs Motion for New Trial to mean that the trial court considered all three enumerated errors to be harmless.
 

 132 The trial court was clearly employing the language of 12 0.8.2001 § 651,
 
 [38]
 
 by holding that the widow was denied a fair trial. The right to a fair trial is a substantial constitutional right.
 
 [39]
 
 In State v. Martin, 1927 OK 147, ¶5, 125 Okla. 24, 256 P. 681 the court recognized that it is a constitutional duty of courts of general jurisdiction to ensure a fair trial whenever a citizen's life, liberty, property, or character are at stake.
 
 [40]
 
 The trial court's finding that the widow was denied her substantial constitutional right to a fair trial establishes that it considered the cumulative combination of these errors to have prejudiced the widow's case to the jury, necessitating a new trial. The trial court's aside noting its uncertainty as to whether the outcome may have been different was merely a nod to the often untraceable pathways by which a cause may arrive at its conclusion and was not an admission that he was granting a motion for a new trial based on harmless error.
 
 [41]
 

 CONCLUSION
 

 1383 A trial court has wide discretion as to whether to grant a motion for a new trial.
 
 [42]
 
 It is the duty of the trial court to safeguard the rights of the litigants to a fair trial and where, in the opinion of the court, a party has not been so protected, may grant a new trial to obviate the error which has occurred.
 
 [43]
 
 In applying the difficult standard which must be met on appeal to show that the trial court erred in granting a new trial, we determine that the appealing doctor has not met the burden.
 

 
 *1254
 
 CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT AFFIRMED.
 

 WATT, C.J., LAVENDER, OPALA, KAUGER, EDMONDSON, TAYLOR, COLBERT, JJ., concur.
 

 WINCHESTER, V.C.J., HARGRAVE, J., dissent.
 

 [1]
 

 . Transcript of Proceedings had on February 11, 2005, Vol. V, p. 1198.
 

 [2]
 

 . Transcript of Proceedings had on February 11, 2005, Vol. V, p. 1123-1126.
 

 [3]
 

 . Transcript of Proceedings had on February 11, 2005, Vol. V, p. 1131.
 

 [4]
 

 . Title 12 0.$.2001 § 651 provides in pertinent part:
 

 A new trial is a reexamination in the same court, of any issue of fact or of law or both, after a verdict by a jury, the approval of the report of a referee, or a decision by the court. The former verdict, report, or decision shall be vacated, and a new trial granted, on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of the party:
 

 1. Irregularity in the proceedings of the court, jury, referee, or prevailing party, or any order of the court or referee, or abuse of discretion, by which the party was prevented from having a fair trial....
 

 Akin v. Missouri Pac. R.R. Co., 1998 OK 102, 34, 977 P.2d 1040. See also, Title 12 0.$.2001 § 78 which provides:
 

 The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect.
 

 Title 12 0.$.2001 § 2104 (A) provides in pertinent part:
 

 Error may not be predicated upon a ruling which admiis or excludes evidence unless a substantial right of a party is affected....
 

 [5]
 

 . Public Serv. Co. v. Brown, 1998 OK 121, ¶7, 972 P.2d 354; Missouri, Kan. & Okla. Trans. Lines v. Jackson, 1968 OK 28, Syllabus, 442 P.2d 287; Badgwell v. Lair, 1958 OK 122, ¶8, 325 P.2d 968.
 

 [6]
 

 . Capshaw v. Gulf Ins. Co., 2005 OK 5, ¶7, 107 P.3d 595; Public Serv. Co. v. Brown, see note 5, supra at 16; Propst v. Alexander, 1995 OK 57, ¶8, 898 P.2d 141.
 

 [7]
 

 . Capshaw v. Gulf Ins. Co., see note 6, supra at 19; Thomas v. E-Z Mart Stores, Inc., 2004 OK 82, ¶5, 102 P.3d 133.
 

 [8]
 

 . Capshaw v. Gulf Ins. Co., see note 6, supra; Propst v. Alexander, see note 6, supra; Strubhart v. Perry Memorial Hosp. Trust Auth., 1995 OK 10, ¶16, 903 P.2d 263.
 

 [9]
 

 . Public Serv. Co. v. Brown, see note 5, supra; Thomas v. E-Z Mart Stores, Inc., see note 7, supra; Propst v. Alexander, see note 6, supra.
 

 [10]
 

 . Capshaw v. Gulf Ins. Co., see note 6, supra; Dominion Bank of Middle Tenn. v. Masterson, 1996 OK 99, ¶16, 928 P.2d 291; Sligar v. Bartlett, 1996 OK 144, ¶13, 916 P.2d 1383; Propst v. Alexander, see note 6, supra; Salyer v. Central Nat'l Bank, 1957 OK 142, ¶9, 312 P.2d 458. We have also noted that a showing that the trial court materially and manifestly erred beyond all reasonable doubt would be sufficient to reverse a trial court's granting of a new trial. Propst v. Alexander, see note 6, supra; Strubhart v. Perry Memorial Hosp. Trust Auth., see note 8, supra.
 

 [11]
 

 . Public Serv. Co. v. Brown, see note 5, supra at ¶7; Lindsay v. Sikes, 1971 OK 40, ¶21-22, 483 P.2d 1141; Montgomery v. Murray, 1970 OK 226, ¶17, 481 P.2d 755.
 

 [12]
 

 . Public Serv. Co. v. Brown, see note 5, supra; Montgomery v. Murray, see note 11, supra at ¶18; Missouri, Kan. & Okla. Trans. Lines v. Jackson, see note 5, supra.
 

 [13]
 

 . Capshaw v. Gulf Ins. Co., see note 6, supra at ¶15 [The order granting a new trial was erroneous as a matter of law.]; Thomas v. E-Z Mart Stores, Inc., see note 7, supra 129 [The trial court erred on a question of law.]; Public Serv. Co. v. Brown, see note 5, supra at ¶9 [No probability in change in outcome of the lawsuit shown.]; Lindsay v. Sikes, see note 11, supra at ¶24 [Trial court abused discretion in granting a new trial.]; Montgomery v. Murray, see note 11, supra at 120 [Trial court abused discretion in granting new trial based on harmless error.]; Missouri, Kan. & Okla. Trans. Lines v. Jackson, see note 5, at ¶15 [It is error to grant a new trial based on harmless error.]; Salyer v. Central National Bank, see note 10, supra at ¶11 [New trial should not be granted for an error which there was no injury.].
 

 [14]
 

 . International News Serv. v. News Pub. Co. of Enid, 1926 OK 411, ¶9, 247 P. 87.
 

 [15]
 

 . Keck v. Bruster, 1962 OK 35, ¶14, 368 P.2d 1003.
 

 [16]
 

 . Rhoades v. Young, 1971 OK 1, ¶9, 479 P.2d 570; Frierson v. Hines, 1967 OK 60, ¶9, 426 P.2d 362. Title 12 O.S. Supp.2002 § 2608 (B) outlines:
 

 B. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crime as provided in Section 2609 of this title, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness if they:
 

 1. Concern the witness's character for truthfulness or untruthfulness;
 

 2. Concern the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
 

 [17]
 

 . Jordan v. Cates, 1997 OK 9, ¶20, 935 P.2d 289. See also Badillo v. Mid Century Ins. Co., 2005 OK 48, ¶66, Fn. 20, 121 P.3d 1080; Andress v. Bowlby, 1989 OK 78, ¶7, 773 P.2d 1265.
 

 [18]
 

 . Transcript of Proceedings had on February 9, 2005, Vol. III, p. 429. The pertinent testimony provides:
 

 Q: Did you ever hear anybody comment in any way about Dr. Abochamh practicing bad medicine?
 

 A: In those specific words?
 

 Q: Yeah.
 

 A: I can't say that I can specifically remember that.
 

 Q: Or that he wasn't a good doctor or just words to that effect?
 

 A: I know there were some controversial issues that came up-
 

 Q: No. I am talking about whether anybody talked about him practicing bad medicine.
 

 A: In so many words, no, sir, I can't say that I recall that.
 

 [19]
 

 . Transcript of Proceedings had on February 10, 2005, Vol. IV, pp. 771-80. Dr. Shahsavari testified regarding the car keying incident, the extent of the damages, the cost of repair, the strain it caused on his relationship with Dr. Abochamh, the action he took with hospital administration, and the repercussions which followed.
 

 [20]
 

 . Transcript of Proceedings had on February 10, 2005, Vol. IV, p. 780. Provides the pertinent testimony:
 

 Q: So the conflict between you and Dr. Abo-chamh is not patient-care related, it was all related to the car-keying incident and the damage he caused to your property?
 

 A: That's right.
 

 [21]
 

 . Transcript of Proceedings had on February 15, 2005, Vol. VII, pp. 1584-90. In closing argument, the incident was mentioned by defendant's counsel no less than three times.
 

 [22]
 

 . Jordan v. Cates, see note 17, supra.
 

 [23]
 

 . Title 12 0.$.2001 § 2401 provides:
 

 Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would without the evidence.
 

 Title 12 0.$.2001 § 2402 provides:
 

 All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Oklahoma, by statute or by this Code. Evidence which is not relevant is. not admissible.
 

 Title 12 0.$.2001 § 2403 provides:
 

 Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise.
 

 [24]
 

 . Smicklas v. Spitz, 1992 OK 145, ¶11, 846 P.2d 362; Midland Valley R.R. Co. v. Pettie, 1945 OK 259, ¶15, 162 P.2d 543.
 

 [25]
 

 . Smicklas v. Spitz, see note 24 supra; LPCX Corp. v. Faulkner, 1991 OK 46, ¶20, 818 P.2d 431; Bradley Chevrolet, Inc. v. Goodson, 1969 OK 25, ¶7, 450 P.2d 500.
 

 [26]
 

 . Smicklas v. Spitz see note 24, supra; Sellars v. McCullough, 1989 OK 155, ¶15, 784 P.2d 1060.
 

 [27]
 

 . B-Star, Inc. v. Polyone Corp., 2005 OK 8, ¶23, 114 P.3d 1082; Sellars v. McCullough, see note 26, supra.
 

 [28]
 

 . Johnson v. Ford Motor Co., 2002 OK 24, ¶28, 45 P.3d 86; Woodall v. Chandler Material Co., 1986 OK 4, ¶13, 716 P.2d 652; Missouri-Kan.Tex.R.R. Co. v. Harper, 1970 OK 77, ¶15, 468 P.2d 1014.
 

 [29]
 

 . Black's Law Dictionary 408 (5th ed.1979) provides:
 

 A medical term, meaning the discovery of the sources of a patient's illness or the determination of the nature of his disease from a study of its symptoms. The art or act of recognizing the presence of disease from its symptoms, and deciding as to its character, also the decision reached, for determination of type or condition through case or specimen study or conclusion arrived at through critical perception or seruti-ny. A 'clinical diagnosis' is one made from a study of the symptoms only and a 'physical diagnosis' is one made by means of physical measure, such as palpation and inspection.
 

 [30]
 

 . Dorland's Illustrated Medical-Legal Dictionary 458 (28th ed. 1994).
 

 [31]
 

 . Transcript of Proceedings had on February 9, 2005, Vol. III, pp. 631-32. The pertinent testimony provides:
 

 Q: You didn't take any vital signs yourself in the-
 

 A. But I observed him.
 

 Q. Did you take his temperature?
 

 A. I did not take his temperature, no.
 

 Q. Did you take his pulse?
 

 A. I listened to his heart.
 

 Q. You didn't record his heart rate?
 

 A. No, I did not.
 

 Q. Did you record his respiration?
 

 A. I did not.
 

 [32]
 

 . Transcript of Proceedings had on February 9, 2005, Vol. III. p. 637. The pertinent testimony provides:
 

 Q: All of those numbers are numbers that basically arrived in the emergency room, right?
 

 A: That's true.
 

 Q: That's nothing that you did or you ordered, it's just you wrote it down from the information you got?
 

 A: Yes, sir.
 

 [33]
 

 . See, State v. LeBlanc, 559 A.2d 349 (Me.1989) wherein a medical expert testifying at trial described a working diagnosis as the result of trying different treatments on the patient and seeing what works.
 

 [34]
 

 . Miller v. Kim, 191 Wis.2d 187, 528 N.W.2d 72 (App.1995).
 

 [35]
 

 . Yates v. University of West Virginia Board of Trustees, 209 W.Va. 487, 549 S.E.2d 681 (2001).
 

 [36]
 

 . Id.
 

 [37]
 

 . Id.
 

 [38]
 

 . Title 12 0.$.2001 § 651, see note 4, supra.
 

 [39]
 

 . A full and fair trial is guaranteed by the Due Process Clause of the 14th Amendment to the United States Constitution. Bracy v. Gramley, 520 U.S. 899, 904-905, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997); Withrow v. Larkin, 421 U.S. 35, 46, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). The Okla. Const. art. 2, § 19 provides in pertinent part:
 

 ''The right to trial by jury shall remain inviolate.... 1
 

 [40]
 

 . See also, Boston v. Buchanan, 2003 OK 114, 1, Fan. 1, 89 P.3d 1034.
 

 [41]
 

 . In the words of Michel Eyquem de Montaigne, "Men by various Ways arrive at the same End." Michel de Montaigne, The Complete Essays 1 (M.A. Screech ed., Penguin Classics 1993) (1572).
 

 [42]
 

 . Capshaw v. Gulf Ins. Co., see note 6, supra; Public Serv. Co. v. Brown, see note 5, supra at ¶7; Propst v. Alexander, see note 6, supra.
 

 [43]
 

 . Negrate v. Gunter, 1955 OK 118, ¶0, 285 P.2d 194; Peoples Finance & Thrift Co. v. Ferrier, 1942 OK 343, ¶0, 129 P.2d 1015.