2015 OK CIV APP 83

Kimberly WATSON–SANTIN,
Plaintiff/Appellee,

v.

ST. JOHN MEDICAL CENTER,
INC., Defendant/Appellant.

No. 111,748.

Court of Civil Appeals of Oklahoma,
Division No. 3.

April 17, 2015.

E. Terrill Corley, J. Derek Ingle, E. Terrill Corley & Associates, Tulsa, Oklahoma, for Plaintiff/Appellee.

Charles H. Moody, Leslie C. Weeks, Jason C. Rush, Emily M. Jones, Rodolf & Todd, Tulsa, Oklahoma, for Defendant/Appellant.

WM. C. HETHERINGTON, JR., Chief Judge.

¶1 St. John Medical Center (Hospital) appeals an order of the trial court granting a new trial motion by Kimberly Watson–Santin (Patient) entered after a jury returned a verdict in favor of Hospital. Following review of the entire record, Hospital has not demonstrated the trial court acted arbitrarily, abused its discretion, or materially and manifestly erred in granting the new trial. The trial judge's order granting Patient's Motion for New Trial is **AFFIRMED**.

## STANDARD OF REVIEW

¶2 In *Capshaw v. Gulf Insurance Company,* 2005 OK 5, ¶7, 107 P.3d 595; 600, the Court describes the appellate review for the grant of a motion for new trial:

A motion for new trial is addressed to the sound discretion of the trial court. When a trial court grants a new trial and its decision is appealed, we will indulge every presumption in favor of that decision's correctness. In reviewing a trial court's grant of new trial, the standard of review an appellate court must apply is whether the trial court abused its discretion. Because a trial court's discretion is broad, its ruling will not be disturbed by the reviewing tribunal in the absence of a clear showing of a manifest error or abuse of discretion with respect to a pure, simple and unmixed material question of law.

(Footnotes omitted.)

¶ 3 "The threshold for upholding the grant of a new trial is much lower than where the motion is overruled." *Ledbetter v. Howard,* 2012 OK 39, ¶ 9, 276 P.3d 1031, 1034 (footnote omitted). As the Court advises in its Supplemental Opinion on Rehearing in *Conyers v. Conyers,* 1963 OK 75, ¶ 2, 386 P.2d 633, 638, "[t]he function of a motion for new trial is to open judicial inquiry into errors occurring during the conduct of the trial proceedings. Its office is to invoke the power of a trial court to correct and cure its own errors." (Citations omitted.) "Furthermore, where the issues raised necessitate an examination of the entire lower court record, we will examine such record to determine if the trial court, in granting the new trial, abused his discretion, acted arbitrarily, or erred on some unmixed question of law." *Strubhart v. Perry Memorial Hosp. Trust Authority,* 1995 OK 10, ¶ 17, 903 P.2d 263, 270 (citation omitted). "An abuse of discretion occurs when a decision is based on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling." *Spencer v. Oklahoma Gas & Electric Company,* 2007 OK 76, ¶ 13, 171 P.3d 890, 895 (emphasis omitted).

### FACTS

¶ 4 In her lawsuit, Patient contended Hospital committed medical negligence due to a delay in providing treatment after a cervical epidural injection caused a hematoma.[1] During voir dire, the jury panel was questioned about their experiences with epidural injections. One juror, Juror J, reported she had two such procedures without any negative results. The trial judge then commented "[a]nd so you're kind of an expert about epidural injections, but I'm going to tell you that it would be inappropriate for a juror to apply any extra special knowledge that they have in deciding the case" and asked if she could set aside her prior lack of problems. Juror J assented. A few other jurors who reported they had received epidural injections also agreed to set aside their prior personal experience and to consider the evidence presented. Later in the voir dire, Juror J indicated she worked at a hospital as a certified nursing assistant. When the proceedings broke for lunch, Hospital moved for mistrial based upon the "expert" comments made by the trial judge to Juror J during the questioning about jurors' experiences with epidural procedures. Hospital's motion for mistrial was denied.

¶ 5 On the second day of trial, the trial judge questioned another juror (Juror B) after he was observed nodding off and then catching himself during the presentation of evidence. Juror B described his situation at home, told how his multiple jobs had caused him to lose sleep, and stated he would get more sleep so as to "not have anymore issues like this." The trial judge offered to take more frequent breaks and to allow Juror B to consume a helpful beverage, if necessary. The trial judge advised Juror B "it's essential that you pay attention here," cautioned him it was important to get sufficient sleep, and warned "if you can't stay awake, I will have to excuse you." Neither parties' attorney raised any further concerns about Juror B at this earlier time.

¶ 6 On the third day of trial proceedings, February 13, 2013, in response to a question by one of Hospital's two trial counsel, Mr. Santin (Husbandn[2]) acknowledged he had told Patient's counsel he had been convicted of a felony for possession of methamphetamine and possession of paraphernalia,[3] at which point the following transpired:

> Q. You've also been convicted for a felony involving truth and dishonesty shortly before that, haven't you, sir?

---

1. According to her petition and subsequent testimony, following the epidural injection, Patient suffered extreme pain and then experienced a progressive loss of sensation in her arms and legs shortly after the epidural injection. She contended she suffered permanent problems with numbness, pain, tingling and burning sensations caused by nerve damage because surgery to treat the hematoma, which extended over several levels of her spine, was delayed.

2. Mr. Santin was Patient's fiancé at the time of the epidural injection and her subsequent wait at Hospital's facility.

3. In response to earlier questions, Husband placed his conviction in 2004 or 2005, and testified he did not serve any time, he had "quit using drugs," and holds down a steady job as a ranch foreman.

A. I don't recall what you're talking about.

Q. Okay. Were you—were you convicted of a felony—Let me make sure I get the wording correct, Judge, I'm sorry. Don't want to misstate. Have you been convicted of any other felonies besides that one, sir?

Counsel approached the bench, the jurors exited on a recess, and the scope of the *motion in limine* was discussed. Patient's counsel contended the final question above was designed to open the door to an old warrant outstanding in California.[4] Hospital's counsel admitted the charge he was referencing was a misdemeanor for obtaining merchandise under false pretenses, not a felony, and he contended he was "allowed to bootstrap backwards from the last conviction." The trial court asked Hospital's counsel what steps had been taken to identify the person whose record was used as the basis of the question and about the birth dates of the person charged and of Husband. It was revealed they were about twenty years apart. Husband identified the person with the same name as his son. In response to a question by the trial judge, Hospital's counsel admitted he was present when the order was entered on the *motion in limine*.

¶ 7 The trial judge noted "if we are going to mistry this case, I much rather would have done it on Monday," and indicated he needed a few moments before he "determine[d] what we're going to do. And when we come back, I'll hear whether we're going to start over again or not." When they returned from the break, the trial judge found Hospital's questioning attorney in direct contempt of court for violation of the *motion in limine*, but suspended a fine and jail time dependent on "good conduct during the balance of the trial,

if we have a balance of this trial." The trial judge went on to explain:

As I see my alternatives—And I haven't heard [Patient] move for a mistrial yet. I could grant one on my own and then consider—and then consider at the conclusion of this case whether I should give [Patient] a free ride if there's a Defendant's verdict in the case.

I can tell the ladies and gentlemen of the jury that [Hospital's counsel] was mistaken, that there—after inquiry, there are no other convictions, and that could be with or without an admonition to the jury that they should disregard and not allow any unfair advantage to be given to [Hospital] by the—by the mistake, and I use that word charitably, of [Hospital's counsel].

What does [Patient] wish me to do?

Patient then moved for mistrial and Hospital suggested: "Your Honor, we believe that an admonition to the jury would be sufficient to cure the misinformation that was given to them." Both of Hospital's counsel apologized to the trial court. The trial judge indicated he "no longer consider[s] the six months in the county jail" but needed "to make a point." The trial judge took Patient's motion for mistrial under advisement and said "[w]e're half way through it. We're going to press on."

¶ 8 The trial judge admonished the jury upon its return, telling them Hospital's counsel had "made a reference to some criminal conviction of somebody that was not the witness on the stand," "the question that he asked about some other criminal conviction was a person that had a similar name but was not this witness," and they should disregard the question which had "absolutely nothing to do with the issues in this case."

---

4. At the February 4, 2013 hearing on *motions in limine* by both parties, several issues were addressed, including the constitutionality and interpretation of a statute on evidence of medical expense admissibility. Hospital contended Husband's deposition testimony about the warrant for a May, 2000 charge in California was inconsistent and this was relevant to his truthfulness, although admittedly irrelevant to Patient's medical care. The trial judge sustained a *motion in limine* "with respect to the outstanding warrant,

finding that the probative value is substantially outweighed by the likelihood of prejudice, unfair prejudice." The trial judge also prohibited mention of the removal of Husband's children from his custody in California as irrelevant and as potentially working "a character assassination." At trial when counsel and the trial judge conferred about the felony question, one of Hospital's counsel indicated an earlier charge was actually a misdemeanor, not a felony, but this information was not communicated to the jury.

¶ 9 Patient rested her case, joint exhibits were admitted into evidence, and Hospital rested without putting on any witnesses. Patient then informed the trial court the parties had agreed Hospital would call two witnesses, a doctor and a nurse, in its case if she did not require its counsel to travel to Florida and California for re-depositions. She contended she did not re-depose these witnesses or call them as witnesses based upon a specific promise to have the witnesses appear live in Hospital's case. Hospital denied entering into such an agreement and claimed an entitlement to make a strategy decision at trial not to call the witnesses. After a brief recess, Patient presented copies of e-mails she contended showed an agreement, the trial judge marked the materials as a Court's exhibit, and found there was not sufficient evidence of a promise by Hospital's counsel such as would entitle Patient to rely upon the witnesses being called in Hospital's case.

¶ 10 Hospital moved for a directed verdict and it demurred. Both requests were denied. After closing arguments, Patient moved to excuse Juror B and asked that an alternate be seated in his place because, despite the trial judge's earlier admonishments on the second day of trial, he had been observed dozing off during the prior day of trial after having been "noticeably asleep" on the first or second day of testimony. The trial judge observed that Juror B had "done better" than he did earlier, he "decline[d] to substitute ... on the basis of the record" made at that time, and released the alternate juror.

¶ 11 Before the jury returned from its deliberations, Patient renewed her motion for mistrial and the trial court denied the motion. Eleven jurors returned a verdict in favor of Hospital, and the trial judge entered the jury's verdict.

¶ 12 Patient moved for a new trial, citing three sections of 12 O.S.2011 § 651 as warranting a new trial:

1. Irregularity in the proceedings of the court, jury, referee, or prevailing party, or any order of the court or referee, or abuse of discretion, by which the party was prevented from having a fair trial;

2. Misconduct of the jury or a prevailing party;

3. Accident or surprise, which ordinary prudence could not have guarded against;

Patient raised the following as meeting these statutory criteria: (1) a suggestion by one of Hospital's counsel that Husband had committed a felony involving truth and honesty; (2) the failure to remove Juror J due to bias and experience which may have influenced other jurors and to remove Juror B, who was observed sleeping or dozing during the presentation of evidence; and (3) unfair surprise by the failure of Hospital to put on expert witnesses as agreed, thus preventing her from cross-examining those witnesses. She contended the cumulative effect of attorney and juror misconduct and the unfair surprise denied her a fair trial.

¶ 13 At hearing on her motion for new trial, Patient contended, *inter alia,* that the improper question about a felony tainted the proceedings from very early in the trial because Husband was a vital witness who provided considerable testimony about what occurred while they were waiting at Hospital's emergency room, during her recovery process, and about her current condition. Patient argued the challenge to his credibility was enhanced by extensive questioning about their physical locations within Hospital's facility and about what nurses had said to him at various times.

¶ 14 Hospital asserted the problems cited by Patient were adequately addressed by the trial judge during the proceedings and although it was not a perfect trial, she did not suffer any detriment constituting error justifying a new trial. The trial court granted her motion for a new trial. This appeal by Hospital followed.

*THE APPEAL*

¶ 15 Hospital contends the trial judge abused his discretion in granting a new trial. Hospital argues there was no error in leaving Juror J and Juror B on the jury, Patient suffered no prejudice due to the felony conviction question, and its failure to put on

defense witnesses was not prejudicial.[5] Hospital contends there were no individual errors and therefore there may be no cumulative error, citing *Steele v. Guilfoyle*, 2003 OK CIV APP 70, ¶ 12, 76 P.3d 99, 103 (which cites *Alverson v. State*, 1999 OK CR 21, 983 P.2d 498, for this proposition). Patient asserts Hospital has not met its burden of proof to warrant reversal. We review the entire record to assess the issues presented on appeal.

¶ 16 This case was tried over a total of five consecutive days, February 11, 2013, to February 15, 2013. The presentation of testimony and other evidence mainly occurred on the second, third and fourth days, and the first and last days primarily were devoted to voir dire, pre-emptory challenges, opening and closing arguments, and the like.

¶ 17 Hospital contends a new trial could not be granted if based upon Hospital's failure to call witnesses at trial. In other words, Hospital appears to suggest that if the grant of Patient's Motion for New Trial was based upon reversal of the trial court's ruling that she had failed to show there was an agreement she was entitled to rely upon, it was error. A request to reopen a case for additional evidence after a party has rested is addressed to a trial court's discretion and a refusal to reopen a case is not an abuse of discretion where the party has failed to use due diligence to procure testimony before resting. *Johnson v. Johnson*, 1983 OK 117, ¶ 19, 674 P.2d 539, 545. Following review of the record, we agree with Hospital's assessment that its failure to call witnesses would

be an erroneous basis upon which to grant new trial, but not with an assumption this has occurred *via* the grant of a new trial.[6] We will not make such an assumption based on the appellate record.

¶ 18 Next, Hospital argues the verdict in its favor would have resulted even if Juror J had been replaced. Patient contends Hospital's argument the replacement of Juror J would have made no difference in the outcome is reasoning prohibited in *Parrish v. Lilly*, 1993 OK 80, 883 P.2d 158. In *Parrish*, a juror is reported to have "repeatedly attempted to express that he had formed a preconceived opinion that was prejudicial to the case," and both the trial judge and the litigants had expressed concerns about the questioned juror's impartiality. *Id.*, ¶ 13, 883 P.2d at 162. Based upon juror bias, the Court reversed an unanimous verdict in favor of a doctor in that medical negligence action. The defendant had argued the juror's presence was unnecessary to achieve the number of jurors necessary for a verdict, but the Court stated "the number of concurring jurors required to render a verdict is not germane" because the issue was not the number required but instead was the need for the jury to "satisfy the constitutional and statutory requirements of impartiality." *Id.*, ¶ 15, 883 P.2d at 162. The record does not support Hospital's intimation the trial court *may* have found Juror J's continued presence on the jury created a lack of a constitutionally required fair and impartial jury, which served as the basis to grant Patient's Motion for New Trial.[7] "Absent a record showing

---

5. Neither the amount of damages nor a wrongful admission of evidence are at issue in this appeal. Jury instructions are not challenged. Consequently, we distinguish cases cited by Hospital such as *Clay v. Choctaw Nation Care Center, LLC*, 2009 OK CIV APP 35, 210 P.3d 855 (affirming grant of new trial due to a failure of support in reasonably competent evidence on amount of damages); *Clark v. Bearden*, 1995 OK 71, 903 P.2d 309 (reversing grant of new trial premised on allegedly inadequate damage award by jury and improper jury instruction); *Fletcher v. Meadow Gold Company*, 1970 OK 135, 472 P.2d 885 (trial judge erred by re-weighing conflicting evidence; damages awarded were within permissible limits of the evidence); and *Aldridge v. Patterson*, 1954 OK 264, 276 P.2d 202 (alleged wrongful admission of evidence found not prejudicial but merely irrelevant; evidence, though

conflicting, supported jury verdict assessing damages and grant of new trial reversed).

6. From a review of the entire record, there appears to have been considerable controversy both prior to trial and on the fourth day of trial over the designations of experts, additional depositions, the permissible scope of witness testimony, and allegations of prejudice (by both sides in the litigation). As to a controversy over the permissible scope of testimony by one medical witness, the trial judge noted "there's considerable gamesmanship that's been played here" and a "colossal waste of time."

7. Further, the existence of such a detriment to a fair trial for Patient appears speculative, given that Juror J was the sole juror *not* voting for the verdict.

otherwise, this court presumes that the trial court did not err. *Fidelity Laboratories v. Oklahoma City*, 191 Okl. 473, 130 P.2d 834 [1942]; *Seidenbach's v. Crown Drug Co.*, 191 Okl. 223, 127 P.2d 800 [1942]." *Hamid v. Sew Original*, 1982 OK 46, ¶ 6, 645 P.2d 496, 497. Reversal will not lie for this alleged error.

■ ¶ 19 Juror B's conduct first was brought to the trial court's attention on the second day of trial and again before the jury retired for deliberation. Thus, unlike in some cases cited by Hospital, his sleeping is an issue preserved for appellate review. Hospital's cited authorities dealing with the *denial* of a motion for new trial do not advance our analysis because of the differing standard of review. As noted above, the threshold for affirming a grant of a new trial is much lower than that where the motion for new trial is overruled. *Ledbetter v. Howard*, 2012 OK 39, ¶ 9, 276 P.3d at 1034. The trial court was aware of Juror B's conduct, noted he had done "better," and expressed that the denial was based on the record made. As with Juror J, we would have to presume the retention of this juror was the basis for the trial judge's grant of a new trial. In light of the lack of any findings of fact or other indication of the basis of the order granting new trial and having reviewed the entire record, we will not presume the trial court adopted the failure to replace Juror B as a basis for its ruling but instead must assess the trial court's ruling in light of the whole record. That record does not support reversal on this single alleged basis.

■ ¶ 20 Hospital argues the "inadvertent" violation of the *motion in limine* on the third day of trial, was harmless error and the grant of the motion for new trial was an impermissable substitution of the trial judge's assessment after the jury rendered its verdict in Hospital's favor. Hospital argues the trial judge's admonishment to the jury "cured any alleged error." Patient contends Husband, who had admitted to another criminal violation, did not have a "pristine" background and the effect of the question was to poison the jury with prejudice and no amount of cautionary instruction could erase the negative impression created by the question itself.

■ ¶ 21 After admonishing the jury, the trial judge polled them, asking each if they could disregard the question and answer at issue. Each juror agreed to do so. However, as the Court states in *Fields v. Saunders*, 2012 OK 17, ¶ 7, 278 P.3d 577, 581:

> [J]urors' assurances that they are unbiased are not dispositive or the sole test. *Bickell v. State*, 1928 OK CR 285, 41 Okla.Crim. 35, 270 P. [88] at 89. As the court in *Bickell* pointed out: "Prejudice is a subtle thing [that] exist[s] in the mind of an individual [and often] cannot be discovered, except by the conduct of some expression of the person entertaining it." *Bickell*, 1928 OK CR 285, 41 Okla.Crim. 35, 270 P. at 89.

Hospital contends the trial judge's remarks about whether Patient should have a "free ride" when discussing the alternatives available regarding the prejudicial question and the taking of Patient's motion for mistrial under advisement indicate an intent to substitute the trial judge's assessment of the evidence for that of the jury. We do not agree. The remarks must be viewed in the context of the entire circumstance surrounding the alleged prejudice being addressed[8] and in light of how the trial judge was in the best position to see and hear Husband's testimony, assess the prejudicial effect, if any, to the improper questions, the effectiveness of the admonition given, and any effect on the course of the subsequent trial proceedings. The record of the trial court's comments before the jury was admonished demonstrates a continuing concern about the prejudicial effect of the felony conviction questions and an appreciation of the seriousness of the potential prejudice from those questions.

8. We reviewed the entire record. Like in *Taliaferro v. Shahsavari*, 2006 OK 96, 154 P.3d 1240, 1249, "[t]he trial court's aside noting its uncertainty as to whether the outcome may have been different was merely a nod to the often untraceable pathways by which a cause may arrive at its conclusion and was not an admission that he was granting a motion for a new trial based on harmless error." (Footnote omitted.)

¶ 22 As the Court explains in *Propst v. Alexander,* 1995 OK 57, ¶ 8, 898 P.2d 141, 147:

> If the new trial is granted by the same judge who tried the case, a much stronger showing of error or abuse of discretion is required for this Court to reverse than if a party appeals from a refusal to grant a new trial.
>
> \* \* \*
>
> The rationale for this rule of law is that the trial court is in a much better position to appraise the fairness of a proceeding before it than can be garnered by review of the record by the appellate court. A decision to grant a new trial should not be reversed unless it is shown beyond all reasonable doubt that the trial court materially and manifestly erred.

(Footnotes omitted.)

[17, 18] ¶ 23 "Moreover, the burden to establish a trial court's abused discretion when granting a new trial rests upon the appellant, not on the appellee." *Capshaw v. Gulf Insurance Company,* 2005 OK 5, ¶ 9, 107 P.3d at 600. "It is the duty of the trial court to safeguard the rights of the litigants to a fair trial and where, in the opinion of the court, a party has not been so protected, may grant a new trial to obviate the error which occurred." *Taliaferro v. Shahsavari,* 2006 OK 96, ¶ 33, 154 P.3d 1240, 1249. Having reviewed this record, we cannot say the trial court acted arbitrarily, abused its discretion or manifestly erred in granting a new trial. Consequently, the trial judge's order granting Patient's Motion for New Trial is **AFFIRMED.**

MITCHELL, P.J., and JOPLIN, J., concur.