## A. C. BICKELL v. STATE.

No. A-6329.    Opinion Filed Sept. 15, 1928.
(270 Pac. 88.)

Blanton, Osborn & Curtis and Garrison & Taylor, for plaintiff in error.

Edwin Dabney, Atty. Gen., M. B. Cope, Erman S. Price, Mac. Q. Williamson, and J. T. McIntosh, for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Garvin county on a charge of making a false report to the bank commissioner with intent to deceive, and was sentenced to serve a term of 18 months in the state penitentiary and to pay a fine of $500.

In April, 1924, the directors of the Farmers' Exchange Bank of Lindsay at a meeting decided that the institution was insolvent, and closed its doors, and placed it in the hands of the state bank commissioner. Defendant at the time was a director and the cashier. He was informed against some time later; the trial was had in January, 1926, resulting in a verdict of guilty. The record was properly preserved, and in due time the appeal was lodged in this court.

It is argued at length with much earnestness that the failure of the bank was through no fault of its officers; that by their zealous effort the bank weathered the period of deflation from 1920 to the close of 1923, and had emerged from the critical condition of that period, and was fairly on the road to stability, when an examiner of the banking department talked over the long-distance telephone from Lindsay to the bank commissioner at Oklahoma City; a part of his conversation was overheard and misunderstood by telephone girls, who spread the misunderstood statements, resulting in a run on the bank. The directors of the bank, to prevent

frightened depositors from securing an undue advantage, and to allow all to share alike in the assets, closed the institution.   That no money was abstracted from the bank, no assets molested, no loans to relatives or favorites made, and without the officers having received their salaries for two or three months the institution ceased business.   From an examination of the questions of law raised, decisive here, we deem it uncessary to determine or discuss the facts.

The principal assignment argued is that the court erred in overruling the challenge for cause to certain jurors; that defendant was thereby compelled to exhaust all his peremptory challenges. and that certain jurors who sat upon the panel were not impartial. F. E. Smith, called as a juror, testified:

"By Mr. Blanton:  Q.   Mr. Smith, I believe you stated a while ago that you had some money in the bank when it failed?   A. Yes, sir.

"Q.   Did you ever form or express to anybody, and I mean by that to state anything about your ideas as to the guilt or innocence of this defendant, or those who were in charge of the bank, as to the guilt or innocence of the defendant as to any particular charge of crime? You need not state what you said, or anything of the kind, but did you ever form an opinion or state an opinion?   A.  I have formed an opinion.

"Q.   Well, did you ever have or express an opinion? A. No, sir.

"Q.   Now, you formed an opinion generally as to the guilt or innocence of the defendant in the conduct of the bank?   A. Yes, sir.

"Q.   That is what you mean by that?   A. Yes, sir.

"Q.   And it would require evidence to remove that opinion, whichever way it was, in this case?   A. Yes, sir.

"Q. And you would go into the jury box with that opinion with you? A. Yes, sir.

"Q. And you would not surrender it until the evidence convinced you that you were wrong about it? A. No, sir.

"Q. And you don't think, then, that you could try this case fairly, both alike to the state and the defendant, do you? A. How was the question?

"Q. You do not think that you could try the case, then, fairly both alike to the state and the defendant, do you? A. Yes, sir.

"Q. You think you could disregard that opinion? A. Yes, sir.

"Q. But it would require evidence? A. Yes, sir.

"Mr. Blanton: We want to challenge this juror for cause. * * *"

When further examined by the state, he testified in substance that he had formed an opinion as to the manner in which the bank was conducted, but had no opinion on the particular charge. The court then overruled a challenge for cause, to which ruling exceptions were saved. Counsel challenged the juror peremptorily, and at the time excepted to being required to exercise a peremptory challenge upon this juror. This juror was a depositor, and had lost money by the failure of the bank; he quite frankly disclosed that he was not fair and impartial. It is true that he said that he had no information about the particular false report to the bank commissioner, but had formed an opinion as to the guilt or innocence of defendant in his management of the bank, which would require evidence to remove. His opinion was necessarily adverse to defendant. In the light of the examination of other jurors retained on the panel, to require defendant to exercise his last peremptory challenge to rid himself of this juror deprived him of a substantial right.

Following the peremptory challenge of the juror Smith, J. B. Baker was called and examined as a juror. He testified he was a depositor in the failed bank; had about $200 in it at the time, and sustained a loss by reason of the failure. He further testified that such fact would not influence him in the slightest degree in returning a verdict. He was challenged by defendant for cause, and the challenge was overruled. The peremptory challenges of defendant being exhausted, he was compelled to accept this juror, who served on the panel in the trial. The disqualification of the juror Baker does not turn altogether upon his having formed or expressed an opinion as to the guilt or innocence of defendant of the particular charge for which defendant was being tried. Section 6, art. 2, of the state Constitution, among other things, provides that justice shall be administered without prejudice. Section 20, art. 2, guarantees a trial by an impartial jury. A person on trial charged with a crime, whether guilty or innocent, is entitled to a trial before an unprejudiced and impartial jury. This is a basic principle underlying our jury system. A juror may be disqualified by reason of having formed a fixed opinion, or for other statutory reasons, and for reasons not stated in the statute; for the fact that certain grounds of disqualification are specified by statute does not prevent a juror from being incompetent on other grounds. "Juries," 35 C. J. § 427, note 77; Turner v. State, 4 Okla. Cr. 164, 111 P. 988. Prejudice is a subtle thing. It may, and often does, exist in the mind of an individual without his being conscious of it. It cannot be discovered, except by the conduct or some expression of the person entertaining it. It has often been said that, though a juror states on his voir dire that he has formed no opinion and is without bias, this is not alone the test of competency; but the circumstances surrounding the juror should be considered in determining his competency. Johnson v. State, 1 Okla. Cr. 321, 97 P. 1059, 18 Ann. Cas. 300;

Scribner v. State, 3 Okla. Cr. 601, 108 P. 422, 35 L. R. A. (N. S.) 985; Temple v. State, 15 Okla. Cr. 176, 175 P. 733; Schrimpsher v. State, 32 Okla. Cr. 371, 241 P. 201.

Our attention has been called to no case where a person sustaining loss in a failed bank has been permitted to act as a juror in a trial of one charged with the management of a bank and under whose management the loss occurred. Probably no such cases exist. If one person who sustained financial loss by failure of the bank may be permitted to serve on the jury, the entire panel might be composed of persons who sustained loss by the failure of the bank. To state the proposition discloses its absurdity.

Excerpts from cases following are not directly in point, but are enlightening. In Miller v. U. S., 38 App. D. C. 361, 40 L. R. A. (N. S.) 973, it was held:

"The son of a holder of stock in an unincorporated joint-stock company is not competent to sit as a juror for the trial of one charged with crime against the company."

In Crawford v. U. S., 212 U. S. 183, 29 S. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392, it was said:

"* * * A jury composed of government employees, where the government was a party to the case on trial, would not in the least conduce to respect for, or belief in, the fairness of the system of trial by jury. To maintain that system in the respect and affection of the citizens of this country, it is requisite that the jurors chosen should not only in fact be fair and impartial, but that they should not occupy such relation to either side as to lead on that account to any doubt on that subject. * * * Modern methods of doing business and modern complications resulting therefrom have not wrought any change in human nature itself, and therefore have not lessened or altered the general tendency among men, recognized by the common law, to look somewhat more favorably, though perhaps frequently unconsciously, upon the side

of the person or corporation that employs them, rather than upon the other side. Bias or prejudice is such an elusive condition of the mind that it is most difficult, if not impossible, to always recognize its existence, and it might exist in the mind of one (on account of his relations with one of the parties) who was quite positive that he had no bias, and said that he was perfectly able to decide the question, wholly uninfluenced by anything but the evidence. The law, therefore, most wisely says that, with regard to some of the relations which may exist between the juror and one of the parties, bias is implied, and evidence of its actual existence need not be given."

In Lockhart v. State, 145 Md. 602, 125 A. 829, it was said:

"After further examinations had been conducted, and 11 talesmen had been accepted, the next one called was found from his testimony to be office manager for an employer who was a creditor of the defendants' firm, and who incurred a loss through its failure. For that reason, and because he had heard his employer discuss the case, the defendants challenged him for cause. The challenge was overruled by the court, on the ground that, according to the talesman's testimony, he had not formed any opinion as to the guilt or innocence of the defendants. The talesman thereupon took his seat in the jury box, and, if he had been finally accepted, the panel would have been complete. * * * The refusal of the court to allow the last challenge for cause to which we have referred was erroneous. The relations sustained by the talesman to one of the class of persons whom the defendants were accused of having defrauded should in itself have been a sufficient inducement to favorable action on the defendants' objection. As office manager for an employer, who suffered loss from the very conduct which the jury would investigate, the talesman had an interest which naturally raised a doubt as to whether he would be able to exercise an impartial judgment upon the important issue to be decided. If the employer had been a technical party to the case, there could be no question but that the talesman would be disqualified. 2 Poe's Pl. & Prac. 254; 16 R. C. L. 273; 24 Cyc. 276; Crawford v. United States, 212 U. S. 183, 29 S. Ct. 260,

53 L. Ed. 465, 15 Ann. Cas. 392. It was because of a wrong alleged to have been committed against the talesman's employer and others with whom the defendants had dealt that they were being prosecuted. There is ample reason for applying to a talesman having such an interest the same rule of disqualification to which he would be subject if his employer had been a party to the proceedings."

The juror Smith should have been excused for cause, and the defendant not required to exercise a peremptory challenge to exclude him from the panel, and the juror Baker was likewise incompetent as a juror. They belonged to a class disqualified by interest.

Objection was made to two other jurors, and affidavits purporting to disclose that they had formed or expressed an opinion were presented on the motion for a new trial, and incorporated in the record, and the argument is made here that they also were incompetent. These affidavits are not sufficiently definite, and, in view of the fact that the case must be reversed for the reasons just assigned, it is unnecessary to discuss these further objections to the jury.

The case is reversed and remanded.

DOYLE, P. J., and DAVENPORT, J., concur.