**MULLINIX CONSTRUCTION COMPANY,**
a corporation, Plaintiff in Error,

v.

Claude MYERS and James L. Furr, partners
doing business under the firm name of
Myers & Furr Truck Contractors, Defend-
ants in Error.

No. 38615.

Supreme Court of Oklahoma.

Nov. 22, 1960.

Rehearing Denied Dec. 20, 1960.

John F. Eberle, Richard J. Spooner, Oklahoma City, for plaintiff in error.

W. H. Brown, Paul G. Darrough, Paul G. Darrough, Jr., Harry C. Marberry, Oklahoma City, for defendants in error.

HALLEY, Justice.

This action for damages for breach of contract was filed in the District Court of Oklahoma County, October 5, 1953, by Claude Myers and James L. Furr, partners doing business as Myers & Furr Truck Contractors, against Mullinix Construction Company, a corporation.

The case was tried to a jury which returned a verdict for the plaintiffs in the sum of $3,500. Motion for a new trial was overruled and judgment rendered for plaintiffs in accordance with the verdict. Defendant appealed and the parties will be referred to as plaintiffs and defendant as they appeared in the trial court.

Plaintiffs alleged in substance that in 1953 they were engaged in contracting to do hauling and trucking work, when the defendant obtained contracts to do certain road work around Cameron, LeFlore County, and also certain work extending from Heavener to Wister Lake.

The defendant asked for bids for the hauling of road material on both jobs and requested plaintiffs to submit bids, which they did in June, 1953. The bids were opened in July, 1953, and plaintiffs were the low bidders, and were so notified by defendant that they had been awarded the contract for hauling on both jobs, that is at Cameron and at Heavener.

Plaintiffs alleged that they performed the Cameron job as contracted, and were notified to be ready to proceed on the Heavener job in the latter part of September, 1953, and were told when their trucks should report for duty; that they obtained drivers for all their trucks and reported for duty on the Heavener job on the day specified; but were notified by de-

fendant for the first time that they would not perform the hauling on the Heavener job.

Plaintiffs alleged that upon reliance upon acceptance of their bid upon the Heavener job by defendant, they had purchased five trucks at a cost of about $10,000, and had spent several hundred dollars in repairing other equipment already owned and had gone to considerable expense in securing truck drivers to report for duty on the second job at the time defendant had set for them to begin such work; and that they would have made a profit of from $9,000 to $10,000 had they been permitted to proceed, but by reason of the attempted cancellation of the contract to do that job they lost the value of their trucks for at least thirty days. They prayed for judgment for $10,000.

The defendant answered by a verified general denial and alleged that the purported oral contract is invalid under the statute of frauds, and was not supported by consideration.

Since most of the evidence before the court as to the question of whether the plaintiffs submitted a bid to do the hauling on one or two projects, we deem it desirable to set out in full their written bid to the defendant. Plaintiffs introduced as their exhibit No. 1, their written bid, together with the envelope in which the bid was forwarded from Jay, Oklahoma, July 2, 1953, to defendant's correct address in Oklahoma City. The bid of plaintiffs to do the hauling on both the Cameron and the Heavener-Wister jobs is as follows:

"Myers & Furr Truck Contractors
Jay, Oklahoma.

"Box 391                    Phone 199
"Mullinix Construction Company
1433 N.W. 5th Street
Oklahoma City, Oklahoma.
"Attention: Mr. Mullinix.
"Dear Sir:

"Enclosed you will find our bid for the two contracts that you have near Poteau and Wister.

"$.052 per ton mile for both contracts on the rock.

"$.065 per yard mile for chips on both contracts.

"We have six trucks; three 1952 Fords with five yard beds and three GMC 1952 with five yard beds. We have just finished a contract for Quapaw Construction Company on Highway 59 South of Jay, Oklahoma. If you wish you may contact Mr. Childress for reference about us.

"Hoping to hear from you, I remain,
"Sincerely yours,

Claude R. Myers
Claude R. Myers
Myers & Furr Truck Contractors"

It is not disputed by the defendant that plaintiffs had contracted to do the work to complete both of the contracts mentioned, and had asked that bids to do the hauling be submitted on both of them. After being notified by defendant that they were the low bidders and could do the hauling on both, they were notified when to start such work. There was never a word in writing that the acceptance of plaintiffs on both projects was conditioned upon satisfactory work on the first project performed.

The defendant, plaintiff in error here, submits four propositions. In its first proposition it contends that the court erred in giving instructions to the jury and especially to Instruction No. 7.

The principal objection of defendant to Instruction No. 7 is that this instruction took from the jury the question of whether the parties contracted to do the Heavener-Wister job, since defendant claimed that if plaintiffs' work was satisfactory on the first job, then it would consider giving them the second job. This objection is based largely upon that portion of Instruction No. 7, which is as follows:

"In this connection you are instructed that under the uncontradicted evidence in this case the plaintiffs and the defendant did enter into a contract for both the Cameron and the Heavener-Wister phases of the construction, * * *."

The above-quoted portion of Instruction No. 7 might be misleading, but for the other provisions, which follow the last-quoted portion of No. 7, and which are as follows:

"* * * but the plaintiffs contend that the contract was an unqualified acceptance of their offer as set out in Plaintiffs' Exhibit #1, while the defendant contends that it contracted to let the Heavener-Wister phase to the plaintiffs only in the event their performance of the Cameron phase was satisfactory. In this connection you are instructed that the burden of proof is upon the defendant to prove by a preponderance of the evidence that the plaintiffs conducted and performed the Cameron phase of the contract in an unsatisfactory manner."

■ When we consider the provisions just quoted, we conclude that there is no merit in defendant's objection to Instruction No. 7. There was conflicting evidence as to whether there was a contract for both jobs or only one, but the question was properly left to the jury.

Instruction No. 8 was excepted to by the defendant upon the ground that it failed to instruct the jury on the question of whether plaintiffs' work on project No. 1 was of such quality as to constitute satisfactory work, insofar as defendant is concerned.

The error complained of in this Instruction rests largely upon the court's having added to proper standard of performance the following words:

"* * * having the experience and equipment which the plaintiffs possessed, * * *.",

and in paragraph No. 2, also said:

"* * * with the experience and equipment which plaintiffs possessed. * * *"

In the first paragraph of No. 8, the court told the jury that in determining whether plaintiffs' work was of such quality as would constitute satisfactory work, that the plaintiffs are to be measured by that degree of diligence and ability "as is ordinarily to be expected of reasonable and prudent trucking contractors on like or similar jobs * * *" and then added the words objected to in regard to their "experience and equipment."

■ We cannot agree that this instruction gave no standard of performance. Defendant had seen their equipment several days before they began hauling on the Cameron job and had investigated their experience before telling them to begin hauling. There is no evidence that the work was not done promptly and in a good and workmanlike manner. The fact that the truck drivers may have stirred up disagreeable dust and drove beyond the speed limit does not prove that they did not do the job in a good and workmanlike manner.

It is also contended that Instruction No. 9 failed to prescribe a rule whereby the jury could clearly ascertain and fix the damages that would be recoverable. No. 9 is as follows:

"If your verdict in this case is in favor of the plaintiffs, it will be your duty to fix the amount of their recovery therefor, which amount should be in such sum as in your good judgment will reasonably compensate them for the damages you may find they have sustained.

"In determining what this amount should be you may take into consideration the length of time of the Heavener phase of the contract, the number and type of equipment owned by the plaintiffs, the amount that was paid by the defendant to have the work done that the plaintiffs would have done, the amount of profit the plaintiffs may have reasonably have been able to make from such a venture, and taking all these things into consideration, along with all the other evidence, facts and circumstances coming to your attention during the progress of this trial, you will return such verdict as the evidence warrants when measured by these Instructions, in no

event, however, to exceed the sum sued for in the amount of $10,000.00."

Defendant cites the general rule as provided by 23 O.S.1951 § 21, as follows:

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin."

We find no merit in the contention that this instruction was erroneous because it told the jury that it might consider the length of time provided in the Heavener-Wister phase of the contract. The record shows that the time allowed defendant on this project was 90 days; that on the Cameron job was 80 days; that hauling was to be on a much longer route, and surely these facts should be considered in arriving at the damages suffered by plaintiffs in being deprived of an opportunity to make a better profit than on the shorter project just completed.

■ We have considered all of the authorities cited by the defendant, but find no merit in the contention that Instruction No. 9 failed to give the jury a proper standard by which to fix the amount of recovery if it found for the plaintiffs.

There is ample evidence to support the verdict of the jury as to the amount of damages suffered by the plaintiffs. It was not disputed that they made a profit of $1,800 on the Cameron project. It is admitted that the Heavener-Wister project was much larger and required much more hauling at the same price per ton mile. It is only reasonable to expect a much higher profit where more hauling is necessary than on a smaller job from which a definite profit is shown to have accrued.

We find no merit in the contention of defendant that the court erred in refusing to give requested Instructions Nos. 2, 3 and 4.

■ The general rule of law relating to requisites of a contract require competent parties, their consent, a lawful object and sufficient cause of consideration; that consent must be communicated and a proposal to revoke must be communicated before its acceptance is known to the proposee and numerous other statutory provisions.

To have given requested Instructions Nos. 2, 3 and 4 would have been error. In the case before us there is no claim that the amount of damages allowed is excessive.

A careful study of the facts disclosed by a voluminous record and the instructions given to the jury convinces us that the instructions given to the jury were sufficient to support the judgment and that the defendant cannot complain, and does not complain of the amount of the judgment.

■ In City of Altus v. Martin, 185 Okl. 446, 94 P.2d 1, 2, we find the following rule announced in the third paragraph of the syllabus as follows:

"In the trial of a law case before a court and jury, it is the duty of counsel to give attention to the instruction which the court gives to the jury, and if, in their opinion, the court has failed to give a proper instruction covering the measure of damages, to call attention to the court to such question, and to request or submit appropriate suppletory instructions on this subject; and, where counsel content themselves by saving a mere technical objection and fail to timely present a requested instruction embodying their theory of the applicable law as applied to the evidence, the cause will not be reversed where it appears that such error, if any, is based solely upon an improper instruction covering such measure of damages, provided said instructions taken as a whole did not mislead the

jury and produce a verdict against the evidence."

Defendant urges that the trial court should have granted it a new trial because of the misconduct of the jury. After the verdict was rendered for the plaintiffs the defendant instituted a proceeding in which each member of the jury and others were called to testify largely concerning their private lives. It is contended that two jurors had committed perjury and were not qualified to serve as jurors. One had committed perjury on his voir dire examination and that William M. Oakley was disqualified because he had paid a fine for a misdemeanor some 14 years prior to the trial of this case.

█ This examination of the jurors is all set out in 148 pages of the case-made. The wife of a juror was called as a witness and it appears that when he came home one night during the trial he told her about the case. She appears to have told him to reach a just decision on the evidence before him. While not proper, there was nothing about this that was prejudicial to defendant.

█ A careful reading of the evidence at this hearing on misconduct of the jury shows that the extensive investigation of the jury failed completely to prove that any juror had any bias or prejudice that would have prevented them from rendering a fair and impartial verdict in the case. None of the jurors knew any of the parties in the case. Nor did they know any of the attorneys for either party.

A new trial may be granted under 12 O.S.1951 § 651, subdivision 2, which is:

"Misconduct of the jury or prevailing party."

We have said that an order will not be reversed for misconduct of jury unless it is clearly shown. Chambers v. Cunningham, 153 Okl. 129, 5 P.2d 378, 78 A.L.R. 905. We previously held in Easterly v. Gater, 17 Okl. 93, 87 P. 853, 10 Ann.Cas. 888, that a new trial will not be granted for misconduct of jurors unless the circumstances raise a reasonable suspicion that such misconduct improperly influenced the verdict.

█ As to the fact that one of the jurors complained of went to his home during the trial and talked to his wife, we have examined Chase v. Cable Co., 67 Okl. 322, 170 P. 1172, and in the third paragraph of the syllabus, it is said:

"The mere fact that a witness for plaintiff held a conversation with a juror will not vitiate a verdict unless the communication was of such a nature as was calculated to corrupt or prejudice the mind of the juror or produce substantial prejudice to the losing party."

We conclude that the trial court had the authority to refuse a new trial under the facts in this case.

█ As its fourth proposition the defendant urges that the verdict and judgment are not sustained by sufficient evidence and are contrary to law. This proposition is based upon 12 O.S.1951 § 651, wherein the sixth subdivision provides that a new trial should be granted where the verdict is not sustained by sufficient evidence, or is contrary to law. Our study of the evidence convinces us that there was sufficient evidence introduced by the plaintiffs to sustain the verdict.

We have also examined all of the evidence bearing upon the damages suffered by plaintiffs and find it sufficient to support the verdict of the jury.

While the defendant attacks the veracity of the plaintiff Myers the jury had a right to believe his testimony, especially where it was corroborated by other evidence. The other plaintiff had a clean record and his testimony corroborated that of his partner as to many material matters.

We have reviewed the entire record and conclude that the court properly instructed the jury; that there is ample evidence to support the verdict of the jury and judgment; that the amount of the judgment is not excessive; that any misconduct of the jury is not shown to have resulted in any

prejudice to defendant. The judgment is affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and JOHNSON, BLACKBIRD, and BERRY, JJ., concur.

JACKSON, J., dissents.