2012 OK 17

Limbusha **FIELDS**, as Personal Representative of the Estate of Keontae Kevon Cole, deceased; Limbusha Fields, individually; and Keon Cole, individually, Plaintiffs/Appellants,

v.

Kristi M. **SAUNDERS**, M.D., and Kathryn Reilly, M.D., Defendants/Appellees,

and

The State of Oklahoma ex rel. The Board of Regents of the University of Oklahoma; Rita Rankaja Ramen, M.D.; Adriana Monica Brune, M.D.; and HCA Health Services of Oklahoma, Inc. d/b/a OU Medical Center d/b/a Children's Hospital, Defendants.

No. 107,302.

Supreme Court of Oklahoma.

March 6, 2012.

Rehearing Denied May 21, 2012.

578

Joe E. White, Jr., Charles C. Weddle, III, White & Weddle, P.C., Oklahoma City, Oklahoma, for Plaintiffs/Appellants.

Hilton H. Walters, Jamie K. Bruehl, Rife Walters & Bruehl, LLP, Oklahoma City, Oklahoma, and Alison A. Cave, Alison A. Cave, PLLC, Edmond, Oklahoma, for Defendant/Appellee, Kristi M. Saunders, M.D.

L. Earl Ogletree, Lane O. Krieger, Wiggins Sewell & Ogletree, Oklahoma City, Oklahoma, for Defendant/Appellee, Kathryn Reilly, M.D.

REIF, J.:

¶ 1 This case presents important issues regarding the right to jury trial guaranteed by Article 2, Section 19 of the Oklahoma Constitution. The primary issue is whether this right has been violated by a juror who concealed bias against one of the parties during voir dire, and revealed such bias of his own accord after a verdict has been rendered. The second but equally important issue is the standard of review to be employed in deciding a claim of error of this nature. One of the well settled tenets of the right to jury trial is that jurors must be impartial, and bias or prejudice in a case disqualifies one as a juror thereon. *Parrish v. Lilly*, 1993 OK 80, ¶ 10, 883 P.2d 158, 160. Considering this fundamental tenet with the specific constitutional command that justice shall be administered without prejudice, Article 2, Section 6,[1] as well as the general constitutional mandate of due process of law, Article 2, Section 7,[2] this Court must conclude that participation by a juror under such circumstances presents a claim of error of constitutional dimension. Error of this nature calls for independent, non-deferential de novo review.[3]

¶ 2 In the case at hand, a jury returned verdicts in favor of the defendants on plaintiffs' medical malpractice claims. Plaintiffs raised the issue of juror bias for the first time in their motion for new trial. The record of the evidentiary hearing on the motion for new trial reveals that plaintiffs did not learn of the bias on the part of a particular juror until after the verdicts were rendered and the jury discharged. The record reflects that the juror in question went to an Oklahoma City bar later in the day after the

---

1. In applying Article 2, Section 6, the Court of Criminal Appeals has declared that "trial before an unprejudiced and impartial jury ... is a basic principle underlying our jury system." *Bickell v. State*, 1928 OK CR 285, 41 Okla.Crim. 35, 270 P. 88, 89.

2. "A fundamental requirement of due process is a fair and impartial trial." *Clark v. Board of Education of Ind. Sch. Dist. No. 89*, 2001 OK 56, ¶ 6, 32 P.3d 851, 854 (footnote omitted). The same general principles to ensure the impartiality of a judge acting as a trier of the fact would apply with equal force to a juror performing that role. Personal bias or prejudice concerning a party makes a judge ineligible to act either as a trier of fact or a trier of law, and requires disqualification. Rule 2.11(A)(1) and (C), 5 O.S. 2011, App. 4. Also, "[a] challenge to an assigned judge for want of impartiality presents an issue of constitutional dimension." *Clark*, 2001 OK 56 at ¶ 7, 32 P.3d at 854 (italics omitted).

3. The United States Supreme Court has said "[its] duty is not limited to the elaboration of constitutional principles [but the Court] must also in proper cases review the evidence to make certain that those principles have been constitutionally applied." *New York Times Co. v. Sullivan*, 376 U.S. 254, 285, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In such cases, "it [is] only natural that [the Court] should conduct an independent review of the evidence on the dispositive constitutional issue." *Bose Corp. v. Consumers Union*, 466 U.S. 485, 508, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984); *see Tsotaddle v. Absentee Shawnee Housing Authority*, 2001 OK CIV APP 23, ¶ 15, 20 P.3d 153, 159 ("Where a case involves a violation of constitutional rights, an appellate court shall exercise its own independent judgment on questions of both law and interpretation of facts." (citation omitted)).

trial was concluded. It is undisputed that the juror talked to another individual at the bar about his service on the jury in this case. The other individual was an attorney and a member of the Oklahoma Bar Association. This attorney was employed as a deputy general counsel for an agency of the State of Oklahoma and had no connection to the case or the attorneys for the parties.

¶3 According to this attorney, the juror related, inter alia, that (1) the plaintiffs would have never won the case with him (the juror) serving in the case, (2) he (the juror) was not impartial despite stating in voir dire he could be, and (3) he (the juror) wanted to "play the judicial system" and believed plaintiffs had the burden to prove the defendants intended harm beyond a reasonable doubt before they could recover. The attorney also related that the juror expressed his dislike for African Americans. The plaintiffs in this case are African Americans.[4]

¶4 In addition to the statements related by the attorney, it is undisputed that the juror provided inaccurate and incomplete information about his criminal convictions on the juror questionnaire used in voir dire. The juror reported that he had misdemeanor convictions from Linn County, Oregon, and Ventura County, California, but omitted another misdemeanor conviction for theft in the Kirkland Municipal Court, King County, Washington. As concerns the Linn County, Oregon conviction, the juror reported his sentence was three days, when he served 168 hours (seven days) and was placed on thirty-six months of supervised probation. The juror failed to disclose that he was serving the probationary portion of his sentence at the time of trial.

¶5 The juror acknowledged that he did talk about his jury service at the place and time as related by the attorney. He denied, however, making any of the statements regarding bias against plaintiffs' right to recover or their race. He acknowledged that his answers on the questionnaire may have been incomplete, but explained that he gave answers in the space allotted on the questionnaire. He stated that he had no bias against the plaintiffs.

¶6 Upon de novo review of the record,[5] this Court finds that the juror in question entertained bias against the plaintiffs' race and their right to recover under the appropriate burden of proof. In reaching this conclusion, we first note that this is not a case where dissenting or minority jurors are attempting to impeach a verdict with which they do not agree by breaching the sanctity of the jury deliberations. This is a case where a juror voluntarily revealed, after verdicts were returned, that (1) the juror entertained disqualifying bias against one

---

4. In his testimony at the evidentiary hearing, the attorney quoted the juror as saying "he (the juror) wasn't going to let that black lady get a verdict." The attorney related that the juror also talked about a black juror and stated, "She was really hard for us to bring around" and "We had a hard time winning that ... black lady over. We knew she was a liberal." On cross-examination, the attorney acknowledged that the juror did not use any "expletives" regarding race, but expressed a dislike for African–Americans by the tone of voice the juror used in referring to the plaintiff as "that black lady" and the African–American juror as "that black juror." When asked by the trial judge whether the juror was expressing dislike for the plaintiff African–American, as opposed to expressing dissatisfaction with the juror who was African–American, the attorney replied that the juror "spoke of two African–Americans, the plaintiff and what I believe he said was another woman juror. And he talked about them at separate times, and he used the same words and the same inflection and I—I was left with an impression that he disliked African–Americans."

5. In general, a trial court's denial of a motion for new trial is reviewed on appeal for abuse of discretion. *Bank of Oklahoma, N.A. v. Red Arrow Marina Sales & Service, Inc.* 2009 OK 77, ¶11, 224 P.3d 685, 693. However, the standard of review to be employed by an appellate court in review of a claim of error is not determined by the procedural device by which an issue is presented for decision. A standard of review is the legal scale to be used by an appellate court in weighing a claim of error. *Unified School District No. 500 v. Robinson*, 262 Kan. 357, 940 P.2d 1 (1997) (syllabus 3). A standard of review provides the degree of deference the decision under review should receive. *Unified*, 940 P.2d at 4. A trial court's decision on the issue of juror bias is an issue of constitutional dimension that implicates the right to a fair trial guaranteed by no less than three constitutional provisions as more fully discussed in ¶1 and its footnotes. An issue of this magnitude, like the issue of jurisdiction, calls for independent, non-deferential de novo review as explained in footnote 3.

party's race and right to recover under the appropriate burden of proof, and (2) deliberately concealed such bias upon voir dire in order to participate in rendering verdicts consistent with such bias.

¶ 7 In rejecting the juror's denials that he entertained such bias or made statements that revealed the bias, we first observe that jurors' assurances that they are unbiased are not dispositive or the sole test. *Bickell v. State,* 1928 OK CR 285, 41 Okla. Crim. 35, 270 P. at 89. As the court in *Bickell* pointed out: "Prejudice is a subtle thing [that] exist[s] in the mind of an individual [and often] cannot be discovered, except by the conduct of some expression of the person entertaining it." *Bickell,* 1928 OK CR 285, 41 Okla.Crim. 35, 270 P. at 89. The *Bickell* court went on to say that "the circumstances surrounding the juror should be considered in determining his competency." *Id.* We find that the juror's misleading answers on the voir dire questionnaire and his revelation of bias to the attorney are sufficient circumstances or expressions upon which to conclude the juror entertained disqualifying bias.

¶ 8 We also think it important to explain why we have given great weight to the testimony of the attorney to whom the juror revealed his bias. This attorney is a member of the bar of the State of Oklahoma who has sworn to reform falsehoods done in court when the attorney has knowledge of such falsehoods. 5 O.S.2011, § 2. The juror's concealment of his bias and admission that he deliberately did so to participate in returning verdicts consistent with his bias constituted a "falsehood done in court" that the attorney was duty bound to bring to the attention of court.

¶ 9 Oklahoma jurisprudence has long recognized the general rule that "[i]f the objection [to a juror] relates to the moral capacity or impartiality of the juror [even] if not discovered until after the verdict, it would no doubt be as good a ground for new trial as a cause of challenge before." *Carr v. State,*

1938 OK CR 106, 65 Okla.Crim. 201, 84 P.2d 42, 46. The syllabus of the case indicates this rule applies to the discovery of a ground to disqualify a juror after verdict when the juror falsely qualifies on voir dire, knowing of the disqualifying ground.

¶ 10 It is well settled that "Courts have a duty to enforce strict observance of the constitutional and statutory provisions designed to preserve inviolate [the] right to, and purity of jury trial." *Jackson v. General Finance Corp.,* 1953 OK 22, ¶ 7, 208 Okla. 44, 253 P.2d 166, 168. As the appellate courts of this State have previously observed, every citizen is "entitled to jurors who [are] unbiased and qualified and 'not only of one such juror, nor eleven but twelve of such class.'" *State v. Smith,* 1958 OK CR 6, ¶ 12, 320 P.2d 719, 724 (cited approvingly in *Parrish,* 1993 OK 80, at ¶¶ 11, 14 n. 3, 883 P.2d at 161).

¶ 11 In the *Parrish* case, this Court squarely held that "[e]ach and every person who sits on a jury, regardless of the number of jurors required to render a verdict, must satisfy the constitutional and statutory requirements of impartiality." *Parrish,* 1993 OK 80 at ¶ 15, 883 P.2d at 162. This Court also said that when an individual with disqualifying bias has served on a jury, "this Court will not engage in speculation regarding the influence such juror may or may not have had on the other members of the jury." *Id.* at ¶ 16, 883 P.2d at 162.

¶ 12 "Subjecting a party to anything less than twelve impartial jurors, where twelve jurors are guaranteed, will not survive judicial scrutiny." *Id.* at ¶ 15, 883 P.2d at 162. The error in such cases cannot be considered harmless and will result in reversal. *Id.* at ¶ 16, 883 P.2d at 162.[6]

¶ 13 In reaching this conclusion, we think it is important to stress that this is a fact specific case of juror bias and not a case of a juror impeaching a verdict. In the case of bias, prejudice is presumed, and the

---

6. Our decision on the issue of juror bias is dispositive of this appeal and we do not address plaintiffs' claim of error regarding the trial court's refusal to instruct on res ipsa loquitur.

At trial on remand, the trial court is free to decide whether a res ipsa loquitur instruction should be given based on the evidence adduced at trial.

impact of the bias on the verdict need not be proven. *Parrish,* ¶ 16. Such bias presents a fundamental constitutional issue involving violation of the absolute right to a fair trial and an impartial jury. Such an issue is reviewable *de novo.*

¶ 14 One of the significant facts in this case is that the disqualifying bias was disclosed by the juror himself, and not by other jurors repeating statements made by the juror during deliberations. Another significant fact is that the juror spontaneously disclosed the bias to a person unconnected to the parties and their counsel, and not in response to prying questions by the parties or their counsel. We stress these points to limit our holding in this case to cases with comparable circumstances.

¶ 15 We also stress these points to make it clear that this Court does not condone jurors impeaching verdicts, or disclosing statements made by other jurors during deliberations. Neither do we endorse efforts by the parties or their counsel to discover a juror's thoughts or personal decision-making process. In a few words, the shocking circumstances of this rogue juror are an absolute factual anomaly that we hope is never to be seen again in Oklahoma jurisprudence. We caution that we will not permit the holding in this case to be used to manufacture a ground for new trial, but we are likewise not hesitant to afford the remedy of new trial free from bias, if such circumstances are ever repeated.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; JUDGMENT OF THE TRIAL COURT REVERSED AND REMANDED.[7]**

¶ 16 TAYLOR, C.J., COLBERT, V.C.J., EDMONDSON, REIF, and COMBS, JJ., concur.

¶ 17 WINCHESTER, J., dissent.

¶ 18 KAUGER, J., not participating.

7. Plaintiffs only appealed the denial of their motion for new trial in regard to their claims against defendants Kristi M. Saunders, M.D., and Kathryn Reilly, M.D. The trial court's judgment

¶ 19 WATT, J., disqualified.

¶ 20 GURICH, J., recused.

COMBS, J., with whom COLBERT, V.C.J., Joins, Concurring:

¶ 1 I fully concur in the majority opinion. I write separately to convey my opinion as to the scope of today's pronouncement. The facts in this case present a balancing test as to an individual's right to jury trial before an unbiased and impartial jury guaranteed by Okla. Const., art. II, § 6, and the provisions of 12 O.S., § 2606(B), that limit the inquiry of a juror for post-verdict testimony, thereby preserving finality of judgments, and protecting jurors from inquiry by unhappy non-prevailing litigants. I must fall on the side of our fundamental right to a jury of our peers, unbiased, unprejudiced, and impartial.

¶ 2 This opinion, however, must not be viewed as opening the floodgates to challenge, post trial, each and every jury verdict, by reason of disappointment in the results of a fairly-tried dispute, to an impartial and unbiased trier of fact.

¶ 3 The limitation on the authority of courts to inquire into the reasons underlying a jury verdict does not mean a juror should disregard the courts' instructions. We do not prohibit racial bias in jury selection only to encourage racial bias in jury deliberations. *See, Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Once seated a juror should not have autonomy as to racial bias. A juror who allows racial bias to influence or dictate an assessment of the case violates their oath as a juror. 12 O.S.1991, § 72, OUJI Instruction 1.3, OUJI Instruction 1.5:

Remember that under our justice system the race, religion, national origin, or social status of a party or his/her attorney must not be considered by you in the discharge of your sworn duty as a juror.

See also, *Coddington v. State,* 2006 OK CR 34, ¶¶ 10–17, 142 P.3d 437, 443–445, and *Grant v. State,* 2009 OK CR 11, ¶¶ 20–28, 205 P.3d 1, 14–15.

is reversed and remanded only as to these defendants. The judgment is otherwise final and undisturbed as to the other named defendants.

¶ 4 The facts of this case, must be viewed very narrowly. The juror openly volunteered to a total stranger his predilection to deny the litigants a fair trial. The stranger happened to be a member of the Oklahoma Bar Association whose very oath as an attorney includes the support and defense of the Oklahoma Constitution. If we allow the open, intentional destruction of the justice system, by jurors whose agenda is to deny to others the basic principles of equality and justice by reason of personal bias or prejudice concerning a party, we erode the pillars of our constitution.

WINCHESTER, J., dissenting:

¶ 1 Prior to today, litigants in Oklahoma have always been subject to an abuse of discretion standard for review of cases involving the denial of a motion for new trial.[1] Today's majority opinion eviscerates this long-standing precedent and substitutes the more stringent, de novo standard of review in its place. In doing so, the majority has created a vague, two-tiered approach in which to review a trial court's decision on whether to grant a motion for new trial and opens the door to discovery of the mental impressions of jurors on post-verdict attacks. The consequence is that trial judges, litigants, and citizens still do not know what level of trust we will place in the determinations made by the trial court in post-trial juror challenges of this type.

¶ 2 I dissent to today's majority opinion because I would affirm the jury verdicts in the underlying matter and accept the judgment of the trial court, which was reached after a comprehensive evidentiary hearing on the matter, that this juror was able to evaluate the evidence on its own merit and decide the case fairly. To hold otherwise will invite the arbitrary and unnecessary removal of jurors and initiation of costly retrials. Moreover, such holding will also undermine the purpose of § 2606(B). The trial judge is well aware of the necessity of fairness and justice, and occupies a much-advantaged position for evaluating juror bias on a case-by-case basis, having tried this case for over a week.

¶ 3 Here, Plaintiffs seek a new trial, in accordance with 12 O.S. § 651(2), claiming that the misconduct of a juror caused them to receive an unfair trial. My colleagues presume racial bias on the part of the juror based on nothing more than another bar patron's *impressions* as to a post-trial conversation he had with the juror while at a bar.[2] In doing so, the majority wholly disregards the juror's denial of the alleged racial statements as well as the trial judge's evaluation of the credibility of all testimony presented. This Court did not observe firsthand the testimony of the bar patron like the trial court did.

¶ 4 We have always held that the trial court has great responsibility and wide discretion in dealing with a motion for new trial based on allegations of juror misconduct.[3]

1. *See, e.g., Rice v. Emerson*, 1937 OK 568, ¶ 8, 181 Okla. 51, 72 P.2d 498, 500; *Parrish v. Lilly*, 1993 OK 80, ¶ 9, 883 P.2d 158, 160; and *Capshaw v. Gulf Ins. Co.*, 2005 OK 5, ¶ 7, 107 P.3d 595. In *Capshaw*, we held that an "appellate court's standard of review is not mere ritualistic legal liturgy. It defines the permissible sweep of critical testing to be undertaken by a reviewing court. Its recitation must be correct and serve more significantly than as an empty gesture." *Capshaw v. Gulf Ins. Co.*, 2005 OK 5, ¶ 7, 107 P.3d 595.

2. In fact, the witness, a member of the Oklahoma Bar Association, also happens to be an admitted friend of Plaintiff's counsel, maintaining his contact information in his cell phone and to whom he referred another friend for the job of paralegal with Plaintiff's counsel's firm. Moreover, instead of contacting the court regarding his conversation with the juror, as he is required to do, the witness called Plaintiff's counsel to discuss the matter with him.

3. *See Rice v. Emerson*, 1937 OK 568, ¶ 8, 181 Okla. 51, 72 P.2d 498, 500 ("A very large discretion is vested in the court in determining the competency and qualifications of jurors, and its action should never be disturbed by an appellate court, unless an abuse of such discretion is clearly apparent.")(quoting *Bradford v. Territory of Okla. ex rel. J.H. Woods*, 2 Okla. 228, 37 P. 1061 (1894)); *Parrish v. Lilly*, 1993 OK 80, ¶ 9, 883 P.2d 158, 160 (abuse of discretion standard applied in reviewing denial of new trial based on juror racial bias). *See also, McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 559, 104 S.Ct. 845, 851, 78 L.Ed.2d 663 (1984)(Justice Brennan, with whom Justice Marshall joins, concurring in the judgment)("Motions for new trial on the basis of juror bias are left to the sound discretion of the trial court, and its deter-

Something more than unverified conjecture is necessary to justify the grant of a new trial where only potentially suspicious circumstances are shown. *United States v. Barber*, 668 F.2d 778, 787 (4th Cir.1982). Further, even when juror bias is actually shown, not every incident requires a new trial. Misconduct must be clearly shown and there must be a reasonable suspicion that the misconduct improperly influenced the verdict. *Mullinix Construction Co. v. Myers*, 1960 OK 241, ¶ 31, 358 P.2d 187, 192 (alleged juror perjury during *voir dire* without clear showing of bias or prejudice is insufficient for new trial on grounds of juror misconduct).

¶ 5 Although I find it reprehensible for anyone, let alone a juror, to utter deprecatory racist remarks, Plaintiffs in this case have failed to show that any juror conduct denied them a fair trial. Plaintiffs' allegations of racial bias are comprised of the following testimony from the Plaintiffs' witness regarding an alleged, post-verdict conversation he had with the juror at a bar:

"Q. You did not put in your affidavit that Mr. Fendrych was prejudiced against blacks, did you?

"A. Well, what I said was as close as I could recall. He did not use—he did not use any expletives with regard—I mean, he—he expressed a dislike for African Americans. That is the most succinct way I can—and accurate way I can say it.

"Q. Is that a quote?

"A. It's not a quote. It's my words saying he expressed a dislike.

"Q. Can you quote what he said that led you to that belief?

"A. It was a number of things. He—it's a—it's a tone of voice we recognize when someone says "that black lady," or "that black juror." I formed an impression based on tone of voice and conduct.

"Q. But your impression didn't rise to the level where you put in the affidavit that you felt he was prejudiced against or biased against blacks, did it?

"A. That's correct."

The trial judge also interrogated the witness:

"The Court: How can you separate out that he was not expressing some dissatisfaction with that person, as opposed to the plaintiff, who was African American?

"The Witness: I can't, Judge. I mean, I'm just trying—I had that impression. And I got it only by tone of voice and there were no, you know, racial slurs.

"The Court: But you don't—I mean, you're not saying that he said that he disliked the plaintiff African American? I mean, we have different African Americans here, and you have one that you've expressed several times that he was exasperated perhaps with that juror.

"The Witness: But with regard to—he spoke of two African Americans, the plaintiff and what I believe he said was another woman juror. And he talked about them at separate times, and he used the same words and the same inflection and I—I was left with an impression that he disliked African Americans.

"The Court: But you can't recall the specific words?

"The Witness: No. But I can tell you, I mean—I can tell you in—absolutely no expletives were used."

And finally:

"Q. Other than the tone of voice and using the word "black," there's no other basis for your judgment that Mr. Fendrych disliked African Americans; is that a true statement?

"A. That is a true statement."

Here, the district court had the opportunity to observe the entire trial proceedings, and the court instructed the jury to decide the case based on evidence received during trial and not from any other source. The court also instructed the jury it must be fair and impartial, it must treat everyone equal under the law, it should not be prejudiced against or biased for a person for such reasons as race, and its decision must not be influenced by sympathy or emotion. A jury is generally

mination should not be lightly disturbed by an appellate court. This is especially true when decision on the motion turns, as it does here, on

the particular facts and circumstances involved.").

presumed to follow instructions. *See Sides v. John Cordes, Inc.*, 1999 OK 36, ¶ 17, 981 P.2d 301, 307–308 (constitutional right to trial by jury "imposes upon the appellate courts the obligation to accord on review the greatest deference to the determination by the trier of fact," and prohibits an appellate court from substituting its subjective view for that of the jury unless the latter's decision is "manifestly wrong").

¶ 6 In this case, the trial court erred on the side of caution and opted to hold an evidentiary hearing on the matter of the juror's alleged bias. At such hearing, testimony was taken from the juror and the witness, based on an alleged conversation the two had while drinking in a bar, and the trial court directly observed the tone of voices, mannerisms and other characteristics that could reflect upon a person's credibility but that are beyond the inherently limited review capabilities of an appellate court. The trial court evaluated the credibility of Plaintiffs' bias claims and rejected the suggestion that Plaintiffs did not receive a fair trial only after weighing all of the evidence.[4] This is the exact constitutional due process required to ensure a fair trial and it is completely unnecessary for an appellate court to engage in a full-scale, non-deferential review to substitute its view for that of the trial court. On this record, we cannot conclude that the trial court's decision about the effect of the alleged juror misconduct was arbitrary, capricious, or unreasonable, or a misapplication of the law. Certainly, there was no abuse of discretion. Accordingly, I dissent.

¶ 7 Additionally, the majority claims that because the juror's alleged statements occurred outside the jury deliberation room, the anti-impeachment rule of § 2606(B) is not implicated. Although I would not delve into the admissibility of the juror's testimony as I believe there is no evidence to overturn the trial court's ruling under an abuse of

discretion standard, I disagree that the juror's statements do not fall within the ambit of § 2606(B). The majority relies on the alleged statements solely to challenge the validity of the verdict and, therein, the mental processes utilized by the juror in reaching his vote for the verdict. Clearly, this is the very purpose for the existence of § 2606(B). The fact that the alleged statements were uttered outside the jury deliberation room has no bearing on whether they strike at the core of the juror's thought process.

¶ 8 As the Court of Criminal Appeals recognized in *Keller v. State*, 1982 OK CR 159, ¶ 18, 651 P.2d 1339, 1343, "public policy dictates that jurors will not be permitted to impeach their verdict after they have been discharged and have mingled with the public." The *Keller* court further found:

It is not only against public policy, but it would be opening the doors of the courts to the practice of fraud and perjury. Litigants against whom verdicts had been rendered would be continually importuning jurors and attempting to obtain from them statements and affidavits upon which such verdicts could be assailed. There would be no end to litigation. It would destroy the very purpose of trial by jury ...

*Keller v. State*, 1982 OK CR 159, ¶ 19, 651 P.2d 1339, 1343.

¶ 9 Here, the majority attempts to distinguish between types of juror misconduct and argues that a heavier burden should exist in cases where there is even a hint of racial bias. The Tenth Circuit addressed this very topic in *U.S. v. Benally*, 546 F.3d 1230 (10th Cir.2008), and rejected the defendant's attempt to characterize racial bias as a more serious and fundamental danger to the justice system than other types of juror misconduct.[5] In *Benally*, the court recognized that while racial bias may be especially odious, it would be difficult to fashion a distinction

---

4. The "[c]redibility of witnesses and effect and weight to be given to conflicting or inconsistent testimony are questions of fact to be determined by trier of facts, whether court or jury, and not questions of law for the Supreme Court on appeal." *Central Plastics Co. v. Goodson*, 1975 OK 71, ¶ 29, 537 P.2d 330, 335. *See also Video Independent Theatres, Inc. v. Cooper*, 1966 OK 219, 421 P.2d 833.

5. This Court has looked to federal case law guidance interpreting Fed.R.Evid. 606(b) as it is substantially similar to § 2606(B). *Willoughby v. City of Oklahoma City*, 1985 OK 64, ¶ 12, 706 P.2d 883, 887.

which would allow juror impeachment testimony, contra to Rule 606(b), in only the "most serious" cases of alleged juror misconduct. *U.S. v. Benally,* 546 F.3d 1230, 1241 (10th Cir.2008). The *Benally* court reasoned that no principled reason exists "to limit the exception only to claims of bias, when other types of jury misconduct undermine a fair trial as well":

> If a jury does not follow the jury instructions, or ignores relevant evidence, or flips a coin, or falls asleep, then surely that defendant's right to a fair trial would be aggrieved, just as Mr. Benally's was. How could we deny that defendant a chance to use juror testimony to seek a new trial, simply because the jury misconduct did not involve racial prejudice? But if every claim that, if factually supported, would be sufficient to demand a new trial warrants an exception to Rule 606(b), there would be nothing left of the Rule, and the great benefit of protecting jury decision-making from judicial review would be lost.

*U.S. v. Benally,* 546 F.3d 1230, 1241 (10th Cir.2008).

¶ 10 The majority claims that the injection of alleged racial bias in this case requires a heightened standard of review because of the constitutional right to a fair and impartial trial. However, the determination of whether a juror is biased in favor of one of the parties, and whether such bias renders a fair and impartial trial impossible, has always been a matter this Court has left to the sound discretion of the trial court. Only in cases where the trial court has been shown to abuse that discretion have we overturned its ruling. If a juror engages in misconduct, whether such misconduct consists of race, gender, or age discrimination, or just plain incompetence,[6] the end result is the same and that is the suggestion that a fair and constitutional trial cannot be had due to such misconduct. Regardless, our standard of review has steadfastly remained abuse of discretion. Because I believe today's decision will allow arbitrary and open-ended post-verdict inquiries to jeopardize the important

policies underlying § 2606(B) and will impose additional costs on the parties, jurors and the judiciary, I respectfully dissent.

---

6. *See, e.g., Tanner v. U.S.,* 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987)("evidentiary hearing including jury testimony on drug and alcohol use was not required under Sixth Amendment right to trial by competent and unimpaired juries").