2013 OK CIV APP 102

**Jack MILLER and Dorothy Miller, Plaintiffs/Appellants,**

**v.**

**AMERISTATE BANK OF ATOKA, INC., and Bruce W. Smith, Defendants/Cross–Claimant/Appellees.**

No. 110037.

Court of Civil Appeals of Oklahoma, Division No. 2.

Oct. 24, 2013.

Tod S. Mercer, MERCER LAW FIRM, P.C., McAlester, Oklahoma, for Plaintiffs/Appellants.

Michael C. Felty, C. Austin Reams, LYTLE, SOULÉ & CURLEE, Oklahoma City, Oklahoma, for Defendants/Appellees.

DEBORAH B. BARNES, Vice–Chief Judge.

¶1 Plaintiffs/Appellants Jack Miller and Dorothy Miller (collectively, the Millers) appeal the trial court's Judgment memorializing a jury verdict in favor of Defendants/Cross–Claimant/Appellees Ameristate Bank of Atoka, Inc. (Ameristate Bank), and Bruce W. Smith (Smith) (collectively, Defendants). On appeal, the Millers assign error to two of the trial court's evidentiary rulings. They argue the trial court erred (1) by admitting a report prepared by the Oklahoma State Bureau of Investigation (OSBI), and (2) by excluding the testimony of a rebuttal witness. Based on our review of the record on appeal and applicable law, we affirm.

## BACKGROUND

¶2 This case arose out of an automobile accident involving multiple vehicles that occurred on October 6, 2008, on a highway in Atoka County, Oklahoma. The highway has one eastbound lane, and one westbound lane. Just prior to the accident, Jack Miller was traveling in the westbound lane, and three vehicles were traveling in the eastbound lane: a road grader, followed by a car driven by Smith, followed by a car driven by Toby L. Evans (Evans). The parties dispute what occurred as Smith, followed by Evans, approached the road grader. The Millers as-

sert that Smith, who was driving a company car of Ameristate Bank, negligently drove into the westbound lane to pass the road grader, resulting in a head-on collision with the vehicle driven by Jack Miller. Defendants, on the other hand, assert that Evans, who was sixteen-years old at the time, rear-ended Smith causing Smith's vehicle to cross the center line into the westbound lane and collide head-on with the vehicle driven by Jack Miller.[1] As a result of the accident, Jack Miller sustained significant injuries, and one of the passengers in Jack Miller's vehicle died.

¶ 3 A jury trial was held in September 2011, and the jury rendered a general verdict in favor of Defendants.[2] The trial court memorialized the jury's verdict in its Judgment filed on September 29, 2011, from which the Millers appeal. On appeal, the Millers assert they were prevented from having a fair trial because of the admission of an OSBI "bulb filament" report, and because of the trial court's exclusion of certain rebuttal testimony. Based on these alleged errors, the Millers request that this case be remanded to the district court for a new trial.

## STANDARD OF REVIEW

¶ 4 As stated, the Millers assign error to two of the trial court's evidentiary rulings. The Oklahoma Supreme Court has stated:

Under the Oklahoma Evidence Code, the trial court stands as a gatekeeper, admitting or excluding evidence based on the judge's assessment of its relevance and reliability. All relevant evidence is admissible, unless the trial court determines that its probative value is substantially out-weighed by the danger of unfair prejudice, confusion of issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise. A trial court has discretion in deciding whether proffered evidence is relevant and, if so, whether it should be admitted, and a judgment will not be reversed based on a trial judge's ruling to admit or exclude evidence absent a clear abuse of discretion.

*Myers v. Mo. Pac. R.R. Co.*, 2002 OK 60, ¶ 36, 52 P.3d 1014, 1033 (footnotes and internal quotation marks omitted). *See also* 12 O.S.2011 § 2402 ("All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Oklahoma, by statute or by this Code. Evidence which is not relevant is not admissible."). An abuse of discretion occurs when a trial court bases its decision on an erroneous conclusion of law, or where there is no rational basis in the evidence for the ruling. *Christian v. Gray*, 2003 OK 10, ¶ 43, 65 P.3d 591, 608.

■ ¶ 5 However, no judgment shall be reversed or affected by reason of any error or defect in the proceedings which does not affect the substantial rights of the adverse party, 12 O.S.2011 § 78, and only "[w]hen a party is prevented from having a fair trial as a result of an error which materially affects the substantial rights of the party [is] a new trial ... required," *Taliaferro v. Shahsavari*, 2006 OK 96, ¶ 13, 154 P.3d 1240, 1244 (footnote omitted). *See also* 12 O.S.2011 § 2104(A) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected...."). "Reversible error has been held to be an error that creates a probability

1. One of the instructions provided to the jury, entitled "The Issues In the Case," provides a similar recitation of the facts and issues of the case, as follows:

    This case involves an automobile accident that occurred on October 6, 2008. The [Millers] claim damages resulting from the collision. The Millers claim that [Smith] and his employer, [Ameristate Bank], were negligent in causing the accident. The Millers allege that [Smith] was attempting to pass a slow moving roadgrader when the collision with the pickup truck being driven by [Jack] Miller occurred. [Smith] and Ameristate Bank deny that [Smith] was negligent and that [Smith] was passing.

    [Smith], who was also injured in the collision, claims that the accident was caused by [Evans], who struck the Smith vehicle from behind in the eastbound lane causing it to go into the westbound lane and into the path of the Miller vehicle.

    These are the issues you are to determine.

    R. at 1544.

2. R. at 1542. The "Pink Verdict Form," signed by nine members of the twelve-member jury, states, "We, the jury, empaneled and sworn in the above entitled cause, do, upon our oaths, find the issues in favor of the Defendants [Smith] and [Ameristate Bank]."

of change in the outcome of the lawsuit." *Taliaferro*, ¶ 13, 154 P.3d at 1244 (footnote omitted).

## ANALYSIS

### I. Bulb Filament Evidence

¶ 6 At the scene of the accident, bulb filament evidence was collected from the taillight of the vehicle driven by Smith. This evidence was then provided to a forensic sciences unit of the OSBI where the evidence was analyzed and a report generated. The OSBI employee who analyzed the bulb filament evidence and who created and issued the report, J. Douglas Perkins (Perkins), was called as a witness by Defendants to authenticate the OSBI report. On direct examination by counsel for Defendants, Perkins confirmed that the OSBI report was the report he created and issued "for the evidence pertaining to this case." [3]

3. Tr. vol. IV at 665.

4. Tr. vol. IV at 669.

5. Counsel for the Millers questioned Perkins regarding the method used as follows:

> What do you do next . . . after you take them out of the envelope? What do you do next when you draw your conclusions, you write this report?
>
> . . . .
>
> A. I take notes. Make observations. Compare back to the literature. . . . For example, if a filament is broken but I look at the ends and they're very jagged that tells me it's a cold break. Therefore the lamp was not energized or turned on at the time that break occurred.
>
> If I see that the filament is sprung out into the bulb, stretched out like a Slinky, then that tells me that it was energized or on. The filament was very hot and stretched. There is also evidence of if the glass bulb is broken an atmosphere or air rushes on in, the oxygen in the air reacts with the tungsten filament [and] produces a white coating that is actually an oxide. That tells me that the bulb was on. There is also conditions of, if a filament is missing and it's (sic) companion filament—if there are two filaments in there, if one exhibits multiband of coloring, which is called peacocking, that tells me that the filament that was missing was on and the other filament was receiving all of the heat from that first filament being on. Therefore, the lamp was still on at the time and we say a force was applied. We don't say, at the time of the accident.
>
> Q. Do what?
>
> A. We refer in our reports that this, say for example a filament is burned out or broken,

¶ 7 At the conclusion of Defendants' direct examination of Perkins, counsel for the Millers asked the trial court, "I get to cross examine the witness before you admit it, right?" The trial court responded in the affirmative, and further stated it would allow the Millers' counsel "to go into some areas to better explain it to the jury so that we all understand what it is that [Perkins] actually did." [4] Counsel for the Millers then proceeded to cross-examine Perkins regarding the method used to analyze bulb filament evidence generally,[5] and regarding the contents of the report prepared from the evidence taken from the taillights of Smith's vehicle.[6] The trial court admitted the report.

¶ 8 Regarding the confidentiality of this OSBI report, 74 O.S. Supp.2010 § 150.5(D)(1) provides, in pertinent part, as follows:

> All records relating to any investigation being conducted by the [OSBI], including

> that it was at a time a force was applied. We don't use the terminology accident, because I don't know when it occurred.
>
> Tr. vol. IV at 678–79.

6. Counsel for the Millers questioned Perkins regarding the contents of the report as follows:

> Q . . . . [I]n item two of your report, it says the lamp contained two filaments. The thin stick filament exhibited hot stretch.
>
> Now, did you have some—were these filaments—did you have quite a few of them or just a few?
>
> I mean, what—was this a proper amount of filament for these type lights?
>
> A. Yes, sir, they're tall (sic) light bulbs. They have two filaments in their construction. One is used as a running light for tall (sic) lights when you're driving at night so people can see you. The other filament is used as a turn signal and a brake light.
>
> Q. Okay. And so, your report here reflects and your conclusion that this indicates the lamp was energized at the time the force was applied. That's item two, I'm sorry. Item two.
>
> A. Yes, since the filaments were stretched and not in their normal coiled configuration, then the lamp was energized at the time the force was applied.
>
> Q. Again, you can't tell the jury when this occurred. Whether it occurred in the wreck or what time the wreck occurred. That is just what you examined and happened at one time or another, is that correct?
>
> A. It's the condition of the bulb at the time I examined it.
>
> Tr. vol. IV at 679–80.

any records of laboratory services provided to law enforcement agencies pursuant to paragraph 1 of Section 150.2 of this title, shall be confidential and shall not be open to the public or to the Commission except as provided in Section 150.4 of this title . . . . [7]

"The Legislature has directed in . . . § 150.5 . . . that all OSBI records shall be confidential and not open to the public." *Amos v. Dist. Ct. of Mayes Cnty.*, 1991 OK CR 74, ¶ 3, 814 P.2d 502, 503.[8] Nevertheless, records relating to OSBI investigations may be available under certain circumstances in criminal proceedings. *Id.* ¶ 2, 814 P.2d at 502–503.[9]

¶ 9 In the context of a discovery dispute in a civil lawsuit the Oklahoma Supreme Court in *State ex rel. Hicks v. Thompson*, 1993 OK 57, 851 P.2d 1077, concluded as follows regarding the applicability of § 150.5(D): "Having reviewed the files and arguments of counsel we find that the OSBI-procured evidence and reports concerning its investiga-

tion are privileged and confidential records under 74 O.S. § 150.5(D)." *Thompson*, ¶ 1, 851 P.2d at 1077. Furthermore, although § 150.5(D)(1) provides that "[a]ll records relating to any investigation *being conducted* by the [OSBI] . . . shall be confidential," *id.* (emphasis added), the *Thompson* Court concluded as follows regarding the applicability of the confidentiality provision to investigations no longer "being conducted": "The fact that the investigation is closed does not alter the confidential nature of those records." *Thompson*, ¶ 1, 851 P.2d at 1077. Consequently, the Supreme Court issued a writ (1) prohibiting the enforcement of the trial court's order permitting discovery of the OSBI evidence and reports, and (2) prohibiting enforcement of the trial court's order "allowing parties in [this] civil lawsuit to take the deposition of [an OSBI agent] by notice and subpoena." *Id.*

¶ 10 We conclude § 150.5(D) clearly applies to the "bulb filament" report in this case and that it was, therefore, privileged and confidential. However, we further con-

---

7. Title 74 O.S. Supp.2010 § 150.5(D) provides in full as follows:

> 1. All records relating to any investigation being conducted by the [OSBI], including any records of laboratory services provided to law enforcement agencies pursuant to paragraph 1 of Section 150.2 of this title, shall be confidential and shall not be open to the public or to the Commission except as provided in Section 150.4 of this title; provided, however, officers and agents of the [OSBI] may disclose, at the discretion of the Director, such investigative information to:
>   a. officers and agents of federal, state, county, or municipal law enforcement agencies and to district attorneys, in the furtherance of criminal investigations within their respective jurisdictions,
>   b. employees of the Department of Human Services in the furtherance of child abuse investigations, and
>   c. appropriate accreditation bodies for the purposes of the [OSBI's] obtaining or maintaining accreditation.
> 2. Any unauthorized disclosure of any information contained in the confidential files of the [OSBI] shall be a misdemeanor. The person or entity authorized to initiate investigations in this section, and the Attorney General in the case of investigations initiated by the Insurance Commissioner, shall receive a report of the results of the requested investigation. The person or entity requesting the investigation may give that information only to the appropri-

> ate prosecutorial officer or agency having statutory authority in the matter if that action appears proper from the information contained in the report, and shall not reveal or give such information to any other person or agency. Violation hereof shall be deemed willful neglect of duty and shall be grounds for removal from office.

We note that the 2011 version of this portion of the statute is the same.

8. Both 74 O.S. Supp.1989 § 150.5(D)—the law applied by the Court of Criminal Appeals in *Amos*—and the law in effect in this case—74 O.S. Supp.2010 § 150.5(D)—contain the same pertinent language. That is, the 1989 Supplement to § 150.5(D) provides, in pertinent part: "All records relating to any investigation being conducted by the [OSBI] shall be confidential and shall not be open to the public or to the Commission except as provided in Section 150.4. . . ." The 2010 Supplement to § 150.5(D) provides, in pertinent part: "All records relating to any investigation being conducted by the [OSBI], including any records of laboratory services provided to law enforcement agencies pursuant to paragraph 1 of Section 150.2 of this title, shall be confidential and shall not be open to the public or to the Commission except as provided in Section 150.4 of this title. . . ."

9. For example, "[e]xculpatory evidence is always available to a defendant and statutory provisions cannot deny access." *Id.* ¶ 2, 814 P.2d at 503.

clude that this privilege, if not claimed by the OSBI,[10] and if voluntarily waived by the OSBI,[11] cannot be invoked by a private litigant in a civil lawsuit to prevent relevant evidence from being admitted at trial.[12] That is, the confidentiality of OSBI records can be waived by the OSBI.[13]

¶ 11 Here, the OSBI initially objected to the admission of the bulb filament report by filing, on September 1, 2011, a special appearance and motion to quash the subpoena served on Perkins, and a request for a protective order barring discovery.[14] The trial court denied the OSBI's motion to quash, ordered Perkins to appear pursuant to subpoena, and found that the OSBI report "may be admitted into evidence upon proper application" in a court minute filed on September 7, 2011.[15] On the same date, the OSBI filed an application for a writ of prohibition in the Oklahoma Supreme Court.[16] However, on September 29, 2011, the OSBI dismissed the application and agreed to produce Perkins to authenticate the OSBI report.[17] We conclude the OSBI voluntarily waived the confidentiality of the OSBI report. Therefore, the trial court did not abuse its discretion by admitting it into evidence.

## II. Exclusion of Rebuttal Testimony

¶ 12 The Millers argue the trial court erred by excluding the testimony of Brent Henry (Henry). The Millers admit that Henry was not listed on the pretrial conference order. However, they argue Henry's testimony was offered as rebuttal evidence.

¶ 13 At trial, and outside the presence of the jury, the trial judge and counsel for the parties discussed the Millers' request to call Henry as a rebuttal witness.[18] Counsel for Defendants objected on the grounds that Henry's testimony was not offered for rebuttal purposes, would serve only to bolster the Millers' case in chief, and would be cumulative. The trial court agreed and denied the Millers' request.

¶ 14 Counsel for the Millers then made an offer of proof stating that Henry would have testified that while he and Evans were on a hunting trip and in a "calm environment," Evans told Henry "that the car in front of him started to pass and so he started to pass too and that the crash happened in the westbound lane."[19] The Millers argue Henry's testimony would have rebutted evidence and an assertion made during the opening statement of Evans' attorney that Evans did not tell any law enforcement officer or anyone with authority anything other than that he hit Smith from behind prior to Smith colliding with Jack Miller's vehicle. The Millers argue the jury "should have been able to hear the directly contradicting testimony

---

10. *See* 12 O.S.2011 § 2509(C) ("If a *claim of governmental privilege* is sustained and it appears that a party is thereby deprived of material evidence, the court shall make any further orders the interests of justice require....") (emphasis added).

11. *See also* 12 O.S.2011 § 2511 ("A person upon whom this Code [i.e., the Oklahoma Evidence Code, 12 O.S.2011 §§ 2101–2611.2] confers a privilege against disclosure waives the privilege if the person or the person's predecessor voluntarily discloses or consents to disclosure of any significant part of the privileged matter. This section does not apply if the disclosure itself is privileged.").

12. As stated above, "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Oklahoma, by statute or by this Code." § 2402. By statute, OSBI records are confidential and, pertinent to the circumstances of this case, the OSBI may rely upon this

statutorily provided privilege to prevent the disclosure of its records in civil lawsuits. *See Thompson*, 1993 OK 57, 851 P.2d 1077.

13. *But note, e.g.,* 74 O.S.2011 § 150.5(D)(2) ("Any unauthorized disclosure of any information contained in the confidential files of the [OSBI] shall be a misdemeanor."). We note that we do *not* conclude that a privileged disclosure constitutes a waiver of confidentiality. *See* § 150(D)(1). *See also* n. 11, *supra.*

14. R. at 1475.

15. R. at 1538.

16. Tr. vol. IV at 639; Case No. PR–109,848.

17. Tr. vol. IV at 640; Case No. PR–109,848.

18. Tr. vol. VI at 860.

19. Tr. vol. VI at 867.

from an unbiased witness [Henry], a deputy sheriff, with authority. Instead ... the jury was left thinking ... that [Evans] had told the same story to police officers all along."[20]

¶ 15 We conclude the trial court erred by excluding the rebuttal testimony of Henry. Henry's testimony was proper rebuttal testimony and was relevant to show Evans made inconsistent statements generally. However, because the error did not affect the substantial rights of the Millers or create a probability of change in the outcome of the lawsuit,[21] we conclude the error was harmless.

## CONCLUSION

¶ 16 Based on our review, we conclude the trial court did not err by admitting the OSBI "bulb filament" report, and the exclusion of Henry's rebuttal testimony does not constitute reversible error. Finding no reversible error, we affirm the trial court's Judgment memorializing the jury's verdict in favor of Defendants.

¶ 17 **AFFIRMED.**

FISCHER, P.J., and WISEMAN, J., concur.

---

**20.** Brief-in-chief at 15.

**21.** The Millers admit that "multiple witnesses" outside of law enforcement "testified to [Evans']  prior inconsistent statements." Brief-in-chief at 14–15.